(827 P.2d 788)

No. 66,653

MICHAEL LEE WILSON, *Appellee*, v. CHERYL ANN WILSON, *Appellant*.

Opinion filed March 6, 1992.

*F. C. "Rick" Davis II* and *Kenneth H. Jack*, of Bruce & Davis, of Wichita, for the appellant.

*G. Craig Robinson*, of Wichita, for the appellee.

Before RULON, P.J., LEWIS, J., and WILLIAM F. LYLE, JR., District Judge, assigned.

LEWIS, J.: This is an appeal from the modification of a 1980 divorce decree pursuant to K.S.A. 60-260(b)(6). The trial court modified the decree to terminate the child support obligations of the appellee after it determined that he was not the biological father of the minor child for whom support was being paid. The mother of that minor child is the appellant. In this opinion, we shall refer to the appellant as Cheryl, to the appellee as Michael, and to the minor child as M.J.W.

We have carefully reviewed the record and conclude that relief was improvidently granted, and we reverse.

This is the second occasion for us to deal with an appeal of this action. Originally, the trial court determined that Michael was not the natural father of M.J.W. and terminated his child support obligations. Cheryl appealed that decision to this court, and we reversed and remanded. (*Wilson v. Wilson*, No. 63,667, unpublished opinion filed December 29, 1989.) We determined on the first appeal that the trial court had erred in considering the question of paternity without determining whether such consideration was in the best interests of the child as required by *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989). We reversed and remanded for appointment of a guardian ad litem and an evidentiary hearing as to what was in the best interests of M.J.W.

The record now before us is the result of the proceedings on remand.

This is a most troublesome fact scenario. At issue is a judicial inquiry as to whether Michael is the natural father of M.J.W. M.J.W. is nearly 17 years of age and was raised to believe that Michael was his natural father. Indeed, as poor as Michael may have been in that role, he was and is the only father M.J.W. has ever known. The ultimate effect of these proceedings on M.J.W. remains a matter of conjecture.

M.J.W. was born to Cheryl a few months prior to her marriage to Michael. However, Michael is listed on the birth certificate as the father of M.J.W.

In 1979, Michael filed an action for divorce. In his petition, he alleged that M.J.W. was the only child of the marriage, asked that he be given visitation rights with M.J.W., and asked that the court set a reasonable amount of child support. The divorce decree stated that M.J.W. was a child of the marriage, awarded custody of M.J.W. to Cheryl, and granted visitation rights to Michael. The initial child support was set at $140 per month. While we perceive that Michael may have had some difficulty in paying the child support, the record indicates that he did so at least sporadically for a number of years.

In 1982, Michael remarried. He and his new wife were apparently unable to conceive a child, and, sometime in 1982, Michael underwent medical testing and was advised by a urologist that he was sterile and most likely had been since birth. At this point, Michael had substantial evidence to indicate that he was probably not the biological father of M.J.W.

In that same year of 1982, Cheryl filed a motion seeking to hold Michael in contempt for failure to pay child support. Michael responded by filing a motion of his own in which he claimed he was not the father of M.J.W. and asked the court to order paternity blood tests. The trial court denied this motion but, at the same time, suggested that Michael file a motion to modify or set aside the part of the divorce decree that related to the paternity of M.J.W. Michael, who was represented by counsel at this time, did nothing further to raise the issue of paternity for nearly six years.

In 1988, Cheryl filed a motion to increase child support. Michael responded by again claiming he was not the father of M.J.W. and again requested blood tests. This time, the trial court

granted his motion, and blood tests were taken. The results show that Michael is not the biological father of M.J.W. Upon a consideration of this blood test result, the trial court terminated Michael's support obligation, and Cheryl appealed that decision to this court. This resulted in our first disposition of the case, which has been discussed earlier.

When we reversed and remanded the first decision, we did so on the basis of *In re Marriage of Ross*, 245 Kan. 591. *Ross* holds that, before ordering blood tests and considering paternity, the trial court must first consider the interests of the child. This requires the appointment of a guardian ad litem to represent the child and a full evidentiary hearing. The issue of paternity is to be considered *only if* the trial court concludes, from the hearing, that such consideration is in the best interests of the child.

The trial court, on remand, appointed a guardian ad litem for M.J.W. and held a full evidentiary hearing on whether the consideration of paternity was in the best interests of M.J.W. After that hearing, the trial court held that it was in the best interests of M.J.W. to consider whether Michael was his biological father.

We hold that the trial court fully complied with our order of remand. The procedure followed what is required by *In re Marriage of Ross* and is in accord with this court's decision to reverse and remand the trial court's original determination. We may disagree with the conclusion that it was in the best interests of M.J.W. to leave him fatherless and without child support assistance. However, we are not the trier of fact and will not attempt to second-guess the trial court on this issue.

We further conclude that the trial court did not err in considering the blood test evidence and in concluding that Michael was not the biological father of M.J.W. We also agree with the trial court's finding that there was no psychological bonding between M.J.W. and Michael and no real father/son relationship. We consider this lack of bonding to be the direct and total fault of Michael, who made very little, if any, effort to be a father to M.J.W.

After the trial court concluded that Michael was not the father of M.J.W., it advised Michael that it could grant no further relief without the filing of a motion under K.S.A. 60-260(b). Michael filed that motion, and the trial court granted it and modified the

divorce decree by relieving Michael of his child support obligations. Our conclusion is that the trial court misapplied 60-260(b) and abused its discretion in granting the motion.

We begin by considering the argument of the appellant that the trial court violated the directions of this court by ordering a K.S.A. 60-260(b) motion to be filed. We respond to that argument by holding that it is without merit.

Cheryl takes the position that *Ross* is somehow to be interpreted as holding that only a guardian ad litem, appointed to represent the child, may raise the issue of paternity. We have reviewed *Ross* and have no hesitation in holding that *Ross* does not establish such a rule. Indeed, we find nothing in *Ross* to support the position taken by Cheryl on this appeal. *Ross* stands for the proposition that the issue of paternity cannot be considered until a guardian ad litem is appointed for the child and a hearing is held to determine whether such consideration is in the best interests of the child. *Ross* does not state nor does it even attempt to state who may raise the issue of paternity.

We find the appellant's argument that only the guardian ad litem could raise the issue of paternity or file the 60-260(b) motion to be without merit.

K.S.A. 60-260(b) is the proper vehicle for modification of a final judgment of a trial court. The question in this case is whether that statute was misapplied and/or whether the motion was timely filed.

K.S.A. 60-260(b) reads, in pertinent part, as follows:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

In this case, the trial court granted relief under K.S.A. 60-260(b)(6), which is the catch-all phrase and which authorizes the granting of relief for "any other reason justifying relief from the operation of the judgment." Under the facts shown, the trial court had no authority to grant the motion under the provisions of 60-260(b)(6).

The general rule applied by both state and federal courts is that the first five grounds of the statute, which are specific, and the sixth, which is the general catch-all, are mutually exclusive:

"K.S.A. 60-260(*b*) enumerates six grounds for relieving a party from a final judgment. The first is 'mistake, inadvertence, surprise, or excusable neglect,' the sixth is 'any other reason justifying relief from the operation of the judgment.' *Any* motion for relief under the section must be made 'within a reasonable time'; if under one of the first three grounds, the motion must be filed within one year.

"Under Fed. R. Civ. P. 60(b), which is identical to K.S.A. 60-260(*b*), it is generally held that the first five grounds, which are specific, and the sixth, which is a general catch-all, are mutually exclusive. *Klapprott v. United States*, 335 U.S. 601, 93 L. Ed. 266, 69 S. Ct. 384 (1949); *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir. 1981); 11 Wright & Miller, Federal Practice and Procedure: Civil § 2864 (1973). The issue before us is, then, whether the order granting relief from the judgment of dismissal was based exclusively on a 'mistake' under K.S.A. 60-260(*b*)(1), or whether it was based on 'any other reason justifying relief from the operation of the judgment,' under 60-260(*b*)(6). If the former, the motion for relief was too late since it came more than one year after the dismissal. If the latter, the motion was timely as being filed 'within a reasonable time.' " *Chowning, Inc. v. Dupree*, 6 Kan. App. 2d 140, 141, 626 P.2d 1240 (1981).

In the later case of *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 260, 697 P.2d 80 (1985), we said:

"Judicial construction of K.S.A. 60-260(b) likewise offers no support for the husband's argument. 'Under 60-260(b), the first five grounds, which are specific, and the sixth, which is a general catch-all, are mutually exclusive.' *Chowning, Inc. v. Dupree*, 6 Kan. App. 2d 140, Syl. ¶ 1, 626 P.2d 1240 (1981). Fed. R. Civ. Proc. 60(b), which is identical to 60-260(b), has been interpreted similarly. [Citation omitted.] This does not, however, require a 60-260(b) movant to seek relief under only one of the six subsections. *Rather, this construction is aimed at preventing parties from using the general catch-all provision, 60-260(b)(6), to escape the time limits for vacating a judgment imposed under the first three subsections of 60-260(b). Chowning, Inc. v. Dupree, 6 Kan. App. 2d 140; see Klapprott v. United States, 335 U.S. at 613-15. Thus, if the basis for setting aside a judgment is, for example, fraud by an adverse party, a 60-260(b) movant can obtain relief only if he files*

*his motion not more than one year after judgment was entered; the party cannot escape this time limit by seeking relief under 60-260(b)(6).* See 11 Wright & Miller, Federal Practice & Procedure: Civil § 2864 (1973). Assuming a party files a 60-260(b) motion within a year of the entry of judgment, as the wife did here, the district court is authorized to grant relief for any of the reasons set forth in the statute. See *In re Petition of City of Shawnee for Annexation of Land,* 236 Kan. 1, 687 P.2d 603 (1984)." (Emphasis added.)

Federal Rule 60(b) is identical to K.S.A. 60-260(b) and, as a result, federal decisions are relevant to our consideration. The federal courts are in accord that 60-260(b)(6) is not to be used to circumvent the time limitations which apply to the first three grounds of 60-260(b). "[I]t is settled that an appellant cannot circumvent the one year limitation by invoking the residual clause (6) of Rule 60(b)." *Serzysko v. Chase Manhattan Bank,* 461 F.2d 699, 702 (2d Cir.), *cert. denied* 409 U.S. 883 (1972).

In *Wallace v. McManus,* 776 F.2d 915, 916 (10th Cir. 1985), we find: "Rule 60(b)(6) is not available if the asserted grounds for relief are within the coverage of another provision of Rule 60(b)."

In *Matter of Emergency Beacon Corp.,* 666 F.2d 754, 758 (2d Cir. 1981), the court said that relief from judgment under clause (6) providing for relief for "any other reason justifying relief" is not available under rule (Fed. R. Civ. Proc. 60) unless the asserted grounds for relief are not encompassed within any of the first five clauses of the rule.

In *Corex Corp. v. United States,* 638 F.2d 119, 121 (9th Cir. 1981), the court stated:

"It is established that clause (6) and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for some reason *other* than the five reasons preceding it under the rule. Thus, in *Corn v. Guam Coral Co.,* 318 F.2d 622 (9th Cir. 1963), the appellant alleged that both clause (2) and clause (6) entitled him to relief from judgment. This Court, citing *Klapprott v. United States,* 335 U.S. 601, 69 S. Ct. 384, 93 L. Ed. 266 (1949), rejected the claim for relief under clause (6); '[R]elief can be had under Rule 60(b)(6) only for reasons other than those enumerated in Rule 60(b)(1)-(5). . . . [A]ppellants here have suggested no reason other than newly discovered evidence for relief from judgment.' *Id.* at 632. Indeed, the language of clause (6) itself, referring to 'any *other* reason justifying relief,' seems to dictate such a result."

Without extending this opinion, we will simply state that most decisions of our sister states, which have statutes similar to 60-260(b), are in accord. Relief cannot be granted under 60-260(b)(6) if the real basis for granting the relief is one of the first three reasons listed in the statute and more than a year has gone by. In other words, the courts will not countenance the use of 60-260(b)(6) to avoid the limitations imposed on use of the first three grounds for relief.

Our examination of the record in this case shows that the real basis for granting relief was that of newly discovered evidence. That newly discovered evidence consisted of the paternity blood tests, which showed that Michael was not the biological father of M.J.W. As a result, the trial court's action was an attempt to modify its decree on the basis of newly discovered evidence at a period of time when more than one year had expired since the date of the decree. This is not permitted under the decisions cited above, and it was error for the trial court to utilize 60-260(b)(6) in this fashion.

The record is replete with indications that the actual reason for relief in this case was newly discovered evidence. Counsel for Michael candidly admitted such on oral argument before this court. In his motion, Michael alleged, among other things, the following:

"In support of said Motion, Petitioner would state to the Court that evidence has been received which shows by a medical certainty that the Petitioner herein is not the father of the Respondent's minor child, to-wit, MJW, and it is no longer equitable that the Court's judgment entered herein have prospective application and Petitioner further believes that justice and equity require the Court to grant him relief from the Court's prior judgment.

"In further support, Petitioner would state and allege that the Court's original judgment was void, as it was based upon the fraudulent omission of information by the Respondent herein in that Respondent knew that the father of the minor child (MJW) was in fact a man by the name of Ronald Jerry Newton, who is now deceased."

It is apparent from a reading of the motion that relief was sought on the basis of newly discovered evidence and fraud. These two grounds are subsections (2) and (3) under 60-260(b) and, in both instances, relief on the basis of newly discovered evidence

or fraud. must be brought within one year from the entry of the judgment. In this case, far more than one year had expired.

There is also an indication that the trial court in fact granted relief on the basis of newly discovered evidence. At one point in announcing its judgment, the trial court stated:

"As to res judicata, I am going to find that it does not apply in this instance, that under the relief from judgment the matter is being determined *on the basis of an altogether different set of facts than were available at the time of the original pleading. . . .*

"So accordingly, the Court is going to find res judicata does not apply and that the matter was presented to the Court on the basis of the facts which were available at the time."

It is difficult to interpret these remarks by the trial court as granting the relief on any basis other than that of newly discovered evidence.

Based upon the facts shown, we hold that the basis of the trial court's modification of its divorce decree was newly discovered evidence. Accordingly, it was error to attempt to circumvent the one-year time limitation that applies to 60-260(b)(2) by granting relief under 60-260(b)(6). We have examined the record very carefully and can find nothing in the pleadings or the evidence presented to indicate that there were any "special circumstances" or any "extraordinary facts" shown that would justify the imposition of 60-260(b)(6). The trial court committed reversible error by attempting to apply 60-260(b)(6) in a situation where the true basis for relief was barred under 60-260(b)(2).

Even if we were to assume that 60-260(b)(6) could be utilized to support the trial court's decision, we are still convinced that the judgment should be reversed. A motion under 60-260(b) must be filed within a "reasonable time." The reasonable time frame is measured by determining when the movant came into possession of facts justifying the relief as compared to the time when he filed the motion seeking the relief.

In the instant matter, Michael was aware in 1982 that he was sterile and, in all probability, not the father of M.J.W. He was further advised by the trial court in 1982 to file a 60-260(b) motion. He did not do so then, and he waited nearly six years before filing such a motion.

We are aware of no Kansas decisions which discuss what factors must be considered in determining this issue. However, in *U.S. v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660-61 (1st Cir. 1990), the defendant was seeking relief from a consent decree which had been filed three years earlier. The Federal Circuit Court, in discussing the question of whether that motion had been filed within a reasonable time, said that what constitutes "reasonable time" for seeking relief from judgment depends on the facts of each case; relevant considerations include whether parties have been prejudiced by delay and whether good reason has been presented for failing to take action sooner.

In *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985), the court said that what constitutes reasonable time to bring a motion for relief from judgment depends on the facts of each case, which are analyzed to determine whether government was prejudiced by the delay and whether the party seeking relief had good reason for failing to take action sooner.

In *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760, the court said that what qualifies as a reasonable time within which relief from a final judgment for "any other reason justifying relief" may be granted will ordinarily depend largely on the facts of a given case, including the length and circumstances of the delay and the possibility of prejudice to the opposing party.

Applying those rules to the facts now before this court, we have no hesitancy in concluding that the trial court abused its discretion in granting Michael's motion. The motion was not filed within a reasonable time. We find nothing in the record to explain why Michael did not file the motion in 1982 as suggested to him by the trial court. There is no good reason given for the six-year delay, and we doubt if one exists. Apparently, Michael made a free and calculated decision in 1982 to ignore the court's advice and to continue to occupy his position as the father of M.J.W. with its attendant child support obligations.

"The broad language of K.S.A. 60-260 (*b*) (6) authorizing relief for "any other reason justifying relief from the operation of the judgment' gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice. *This power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains*

*under a duty to take legal steps to protect his interests."* (Emphasis added.) *Neagle v. Brooks,* 203 Kan. 323, Syl. ¶ 5, 454 P.2d 544 (1969).

It appears to us that Michael had a duty to take legal steps to protect his interest in 1982 and that, by waiting until 1988 to do so, he failed to take action within a reasonable time.

We have considered whether Michael had a valid reason for waiting six years to raise the issue. The other side of the question is whether such delay has prejudiced any of the other parties. We believe that, in circumstances such as this, delay is inherently prejudicial to the child whose life is being torn asunder by judicial proceedings. As Justice Lockett said in *In re Marriage of Ross*:

"The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child. Although someone may suffer, it should never be the child, who is totally innocent and who has no control over or conception of the environment into which he or she has been placed." 245 Kan. at 602.

It appears that the delay of revealing to the child that Michael was not his natural father was certainly prejudicial to M.J.W. Because of Michael's inaction, the child was led to believe for another six years that Michael was his natural father. We realize that Michael and the child apparently had no psychological bonding and no close father/son relationship. This, however, does not soften the shock to a teenager who is suddenly rendered fatherless by the actions of the court. While the six-year delay on Michael's part in raising this question may have been financially beneficial to M.J.W., we certainly doubt whether it was emotionally beneficial to the child.

Given the totality of circumstances shown in this case, we hold that the 60-260(b) motion filed by Michael was not filed within a reasonable time after Michael came into possession of reliable medical information that indicated he was not the natural father of M.J.W. For that reason, the trial court abused its discretion in granting the motion to modify the original divorce decree.

The decision of the trial court is reversed and remanded with instructions to give consideration to Cheryl's motion to increase child support.

Reversed and remanded with instructions.