(880 P.2d 1279)
No. 70,968

In the Matter of the Marriage of CRAIG W. LARSON,
*Appellant,* and MARLA J. LARSON, *Appellee.*
Aff'd 257 Kan. 456, 894 P.2d 809 (1995).

Opin-
ion filed August 26, 1994.

*Charles A. Peckham,* of Brown, Creighton & Peckham, of Atwood, for
the appellant.

*Allen Shelton,* of Clark, Shelton & Pratt, P.A., of Oberlin, for the appellee.

Before LEWIS, P.J., LARSON and GERNON, JJ.

LEWIS, J.: Craig W. Larson and Marla J. Larson were divorced
on January 9, 1992. On that same date, the parties entered into
a written property settlement agreement, which was incorporated

into their decree of divorce. The terms of this agreement were negotiated by the parties, and it was presented to the trial court for approval. On January 8, 1993, Craig filed a motion seeking to modify the property settlement agreement. The trial court denied the motion, holding that it was not filed within a reasonable time under K.S.A. 60-260(b). Craig appeals from that determination.

Craig and Marla were the parents of four minor children, who ranged in age from 14 to 2 years at the time of the divorce. The parties were granted joint custody of the children, with the residential custody being awarded to Marla. There are no issues on this appeal concerning the custody or support of the minor children. We note by way of information only that subsequent to this appeal, the trial court modified the agreement insofar as child support is concerned.

The property settlement agreement obligated Craig to pay Marla maintenance in the total amount of $50,000 at the rate of $1,000 per month. In his motion, Craig requested modification of the maintenance decree. The trial court denied the motion as to maintenance. Although this issue is described in the notice of appeal, it was neither briefed nor argued to this court. Accordingly, we conclude that any issue concerning the propriety of the order denying modification of maintenance has been waived.

The central issue to this appeal is the modification of the property settlement portion of the agreement.

Under the property settlement agreement, Marla was awarded, as her sole and separate property, "the motor vehicles, household goods, appliances, clothing, personal effects and furniture now in her possession." In addition, Marla was to have all "bank accounts, saving accounts and the like now held or owned by her."

The balance of the property owned or accumulated by the parties was awarded to Craig. This included all real estate, farm machinery, stock in a feedlot operation, etc. We do not have a detailed listing of the property awarded to Craig or its value.

In order to even up the distribution of property, Craig agreed to pay Marla, as division of property, the sum of $209,150. This amount of money was to be paid over a period of time. The sum of $5,000 was to be paid within three months of the divorce. The sum of $37,500 was to be paid in annual installments of $2,500

each, beginning November 1, 1992, and being due and payable on the first day of November of each year thereafter for the next 14 years. Craig agreed to pay the remaining $166,650 in monthly installments. These monthly installments are to begin on April 1, 1996. The last monthly installment is due and payable on June 1, 2006. The installments begin at $1,000 per month, then increase to $1,225 per month, then to $1,450 per month, and finally top out at $1,675 per month, which is the amount due on the last 19 installments. The payout of the property settlement amount was structured so that the total monthly amount due from Craig for child support, alimony, and property settlement payments would not exceed $1,900. For that reason, the only property settlement payments due from Craig until April 1996 are the $5,000 payment due within the first three months of the divorce and the $2,500 payments due on November 1 of each year. By April 1996, all of the maintenance will be paid, and Craig will begin monthly installments on the property division owed to Marla.

This agreement was signed and the divorce was granted on January 9, 1992. On January 8, 1993, one day less than one year from the date of the divorce decree, the motion to modify was filed.

After conducting a full hearing on the motion to modify, the trial court denied the motion. The trial court held, among other reasons, that the motion was not filed within a reasonable time from the date of the divorce decree. The reasons offered in support of the motion will be discussed later in this opinion.

## TIMELINESS OF MOTION

Craig announced to the court that his motion was based on K.S.A. 60-260(b)(1) and (2). Specifically, Craig appears to rely on the grounds of excusable neglect and newly discovered evidence. K.S.A. 60-260(b) reads as follows:

"On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment

has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken."* (Emphasis added.)

Craig argues that a motion filed under 60-260(b)(1) or (2) is timely if filed within one year after the "judgment, order, or proceeding was entered or taken." It is obvious that the motion of January 8, 1993, was filed within one year of the divorce decree. Thus, Craig argues, his motion was timely and the trial court erred in requiring that it also be filed *within a reasonable time*. We do not agree.

We are unable to find a Kansas decision directly on point, and the matter is one of first impression in this state. We do have decisions which deal with the timeliness of a 60-260(b) motion, but none which involve the precise issue presented on this appeal.

We view the statute as plain and unambiguous. It says: *"The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken."* (Emphasis added.) As we read the statute, a period of one year from the date of judgment is the extreme outer limit of time in which a motion under 60-260(b)(1)-(3) may be filed. Not only must the motion be filed within one year of the date of the judgment, it must be also filed "within a reasonable time." As we construe the statute, a motion could be held as not filed within a reasonable time even though it was filed within the extreme time limit of one year from the date of judgment.

In *Beal v. Rent-a-Center of America, Inc.,* 13 Kan. App. 2d 375, 376, 771 P.2d 553, *rev. denied* 245 Kan. 782 (1989), we said: "The motion to reconsider, however, specifically stated that it was filed pursuant to K.S.A. 60-260(b), and the only time limitation for the filing of such a motion *is that it be filed within a 'reasonable time' and not more than one year after the order was entered."* (Emphasis added.) This is a correct statement of the law, although the *Beal* decision may not be considered conclusive since it did not involve the questions presented here.

In 3 Vernon's Kansas C. Civ. Proc. § 60-260.4, pp. 522-23 (1964), we find the following:

"Six grounds for a motion for relief from judgment are set forth in Rule 260(b). The overall requirement is that any such motion be brought within 'a reasonable time.' A further limitation requires that a motion on the first three grounds be made within one year from entry of judgment. These requirements are cumulative; that is, a motion on the ground of alleged 'excusable neglect,' the first ground, may be untimely because not brought within a 'reasonable time' although brought within the one-year period."

Rule 60(b) of the Federal Rules of Civil Procedure is identical to K.S.A. 60-260(b). The federal decisions on the subject are relevant to our consideration and appear to be unanimous in holding that a motion under Rule 60(b)(1) and (2) must be filed within a reasonable time and in no event later than one year from the date of judgment. *Wilson v. Wilson*, 16 Kan. App. 2d 651, 657, 827 P.2d 788, *rev. denied* 250 Kan. 808 (1992).

At 11 Wright & Miller, Federal Practice and Procedure: Civil § 2866, p. 232 (1973), it is said, regarding Rule 60(b)(1), (2), and (3): "The one year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time' even though the one year period has not expired."

There are numerous federal decisions following the rule indicated in Wright & Miller. In one of those decisions, *Rhodes v. Houston*, 258 F. Supp. 546, 558 (D. Neb. 1966), the court said:

"The rule, therefore, imposes a twofold time limitation upon resort under it to any one or more of its reasons numbered (1), (2), and (3). Those limitations are, first, that the motion on those three grounds, or any one or more of them, must be 'made within a reasonable time' and, secondly, that it must be made, in any event, 'not more than one year after the judgment, order, or proceeding was entered or taken.' And that restriction has consistently been held to bar the allowance of relief for any one or more of those three reasons, either if the motion for such relief be filed more than one year after the entry of the order or judgment by it assailed, *or if it be filed at any time after such entry which, in the circumstances of the case, is not reasonable, even though that interval be less than one year*. [Citations omitted.]" (Emphasis added.)

In *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 606 (7th Cir. 1986), the appellant was arguing that the trial court's refusal to grant a Rule 60(b) motion after a short delay of less than four

months was an abuse of the "one-year rule." The Seventh Circuit held against the appellant and stated:

"Contrary to Kagan's belief that all motions filed within one year of the dismissal are timely under Rule 60(b)(1), 'the one-year period represents an extreme limit and the motion will be rejected as untimely if not made within a "reasonable time" even though the one-year period has not expired.' Wright & Miller, Federal Practice and Procedure, Civil, § 2866, p. 232. *See also, Bank of California v. Arthur Anderson & Co.*, 709 F.2d 1174 (7th Cir. 1983). 'There is no hard and fast rule as to how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable.' *Sudeikis v. Chicago Transit Authority*, 774 F.2d 766, 769 (7th Cir. 1985). 'What constitutes "reasonable time" depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and [the consideration of] prejudice [if any] to other parties.' *Ashford v. Stewart*, 657 F.2d 1053, 1055 (9th Cir. 1981)." 795 F.2d at 610.

In *Planet Corp. v. Sullivan*, 702 F.2d 123, 125-26 (7th Cir. 1983), we find the following:

"Defendant-appellant neglects to inform this court which subsection of 60(b) he relies upon. Since the default was entered because of defense counsel's failure to appear, it would seem that (1) 'excusable neglect' would be a promising avenue. That argument is not mentioned. Instead, appellant merely makes broad and repetitive assertions of 'fraud upon the court' ((3)? (6)?), and claims that the judgment is void for failure to give notice. ((4)?). Perhaps appellant decided to file his motion on the 365th day following judgment in order to hedge his bets on the applicable limitations period. Such a strategy, however, would not necessarily be availing because 60(b) does not provide that grounds (1), (2), and (3) may be raised at leisure up to one year. The 'reasonableness' requirement of Rule 60(b) applies to all grounds; the one year limit on the first three grounds enumerated merely specifies an outer boundary. [Citation omitted.]

"Under certain circumstances, it could well be 'unreasonable' to file a motion to vacate well within one year of judgment. 'What constitutes "reasonable time" depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties.' [Citation omitted.] . . . '*Although the fact that a motion was made barely within the one year time limit gives the court the power to entertain it, as the delay in making the motion approaches one year there should be corresponding increase in the burden that must be carried to show that the delay was "reasonable".*' Amoco Overseas Oil Co. v. Compagnie Nationale Al-

*gerienne de Navigation,* 605 F.2d 648, 656 (2d Cir. 1979)." (Emphasis added.)

For state decisions in accord, see *Waldeck v. Domenic Lombardi Rlty., Inc.,* 425 A.2d 81, 83 (R.I. 1981); *Murphy v. Bocchio,* 114 R.I. 679, 682-85, 338 A.2d 519 (1975); *Savas v. Savas,* 181 W. Va. 316, 318, 382 S.E.2d 510 (1989); *Coolfont Mountainside Ass'n v. Ashelman,* 180 W. Va. 638, 640, 378 S.E.2d 847 (1989).

We adopt the reasoning of the decisions listed above. We hold that as to motions filed under 60-260(b)(1), (2), and (3), the one-year period represents an extreme limit and the motion may be rejected as untimely if not made within a "reasonable time" even though it was filed within one year of the date the decree sought to be modified was entered or taken.

In the instant matter, the motion was filed within one year of the date of judgment. However, the trial court had the authority to deny the motion as untimely because it was not filed within a reasonable time.

## DID THE TRIAL COURT ERR IN HOLDING THE MOTION WAS NOT FILED WITHIN A REASONABLE TIME?

The most difficult question presented on this appeal is whether the trial court abused its discretion in concluding that the motion to modify was not filed within a "reasonable time." The facts at hand make this a close and difficult decision.

Our standard of review is outlined in *Richardson v. Richardson,* 3 Kan. App. 2d 610, 611, 599 P.2d 320, *rev. denied* 226 Kan. 792 (1979):

"A request for relief pursuant to K.S.A. 60-260(*b*) is addressed to the sound discretion of the trial court and appellate review is thus limited to determining whether the court abused its discretion. [Citations omitted.] Generally, judicial discretion is abused when the action taken is arbitrary, fanciful or unreasonable, or when no reasonable man would take the view adopted by the trial court. [Citation omitted.]"

See *Wahwasuck v. Kansas Power & Light Co.,* 250 Kan. 606, 609, 828 P.2d 923 (1992); *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973).

"A party claiming an abuse of trial court discretion bears the burden of showing abuse of discretion." *Falls v. Scott,* 249 Kan. 54, 63, 815 P.2d 1104 (1991).

We can only overturn the judgment in this matter if we find it to have been arbitrary, fanciful, or unreasonable. Even if we should personally disagree with the decision, we cannot reverse it unless we can conclude that no reasonable person would take the position adopted by the trial court.

Craig's motion was supported by evidence that he had been misled by a third party as to the financial condition of the feedlot operation owned one-half by Craig and Marla and one-half by Craig's parents. At the time the settlement was entered into, the evidence indicates that Craig believed that the feedlot would show a profit of $250,000 for 1991. It was from this profit that Craig would obtain the cash flow to fund the property division payments to Marla.

Craig's reliance on a sizeable profit from the feedlot operation was soon shattered. By March 1992, two months after the settlement, an audit revealed that instead of a profit of $250,000, the feedlot would show a loss of $150,000, a $400,000 turnaround. There is no question but that Craig knew in March 1992 the true financial condition of the feedlot. Despite having gained this knowledge in March 1992, Craig waited nine months to file a motion to modify the decree. He waited even though he had faced at least one motion to cite him for contempt within this nine-month period. Indeed, his motion for modification was only filed after a second motion to cite him for contempt had been filed. When the motion to modify was filed, it was filed one day short of the extreme limit of one year.

Craig argues that he did not know the true nature of the feedlot's financial situation when he signed the settlement agreement. He insists that he never would have signed the agreement had he known the truth, which he argues was hidden from him by an untrustworthy feedlot manager.

Despite his testimony, there is evidence that Craig either knew or should have known that the feedlot's financial picture was not as rosy as it appeared. He was asked, and he answered, the following question:

"Q. The fact of the matter is you suspected a problem out there and you signed the property settlement agreement, didn't you?
"A. Yes."

Craig admits that when he signed the property settlement agreement, he knew there was an audit being conducted on the feedlot operation. "My lawyer at that time was encouraging me to sign, when in fact he knew there was an audit going on at the feedlot." There is, therefore, a suggestion in the evidence that Craig should have known something was amiss with the feedlot operation and, despite this knowledge, he signed the property settlement agreement.

Under all of the circumstances shown, we must determine whether the trial court erred in denying the motion. It is obvious that Craig knew the true facts of the feedlot's financial situation for a period of nine months and did nothing. It is also inferable that he knew or should have known that the feedlot's balance sheet was amiss when he signed the property settlement agreement.

The trial court, in denying the motion, gave the following reasons:

"This Court attempted on several times, contrary to his statement, to set this matter down for hearing and had a difficult time getting that done. The Court therefore is going to deny the motion to set aside the property settlement agreement for the reasons, one, the property was under the exclusive control of Mr. Larson during this period of time that the losses occurred. Second, it was not timely made in that even after he knew of these losses, he waited nine months to alert the Court or bring it to the attention through a formal motion; and three, there is no way to put the parties back into a position where they were on January 9th of 1992, and the condition has deteriorated further since that date to today's date."

We construe the court's comments as being directed to the timeliness of filing the motion. There is no question from the record but that the status quo which existed on January 9, 1992, could never be restored. At one point in the transcript, the following discussion occurred:

"THE COURT: Is there any way to put these parties back to, even under your conditions, where they would have the same net worth they would have possibly had in December of 1992?

"MR. PECKHAM: No, Your Honor, because that money is gone.

"THE COURT: And is there any . . . way to put them back into the same position they would have been at the time they separated in January of 1991, December of 1991?

"MR. SHELTON: Actually December of 1990, Your Honor.

"THE COURT: Yeah, December of 1990.

"MR. PECKHAM: Realistically, no, Your Honor.

"THE COURT: And the condition has deteriorated since that time so if it's set aside, there is no way there could be sufficient assets set aside even to make an equitable or 50 percent split of the property, correct?"

Can we conclude that no reasonable person would agree with the trial court's action? In *Wilson v. Wilson*, 16 Kan. App. 2d at 659-60, we said: "A motion under 60-260(b) must be filed within a 'reasonable time.' The reasonable time frame is measured by determining when the movant came into possession of facts justifying the relief as compared to the time when he filed the motion seeking the relief."

In *Wilson*, the period of time involved was six years. In the instant matter, Craig came into possession of facts justifying relief approximately nine months before he filed the motion seeking the relief.

In *Wilson*, we set forth the factors to be considered in determining this issue:

"We are aware of no Kansas decisions which discuss what factors must be considered in determining this issue. However, in *U.S. v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660-61 (1st Cir. 1990), the defendant was seeking relief from a consent decree which had been filed three years earlier. The Federal Circuit Court, in discussing the question of whether that motion had been filed within a reasonable time, said that what constitutes 'reasonable time' for seeking relief from judgment depends on the facts of each case; relevant considerations include whether parties have been prejudiced by delay and whether good reason has been presented for failing to take action sooner.

"In *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985), the court said that what constitutes reasonable time to bring a motion for relief from judgment depends on the facts of each case, which are analyzed to determine whether government was prejudiced by the delay and whether the party seeking relief had good reason for failing to take action sooner.

"In *Matter of Emergency Beacon Corp.*, 666 F.2d 754, 760, the court said that what qualifies as a reasonable time within which relief from a final judgment for 'any other reason justifying relief' may be granted will ordinarily depend largely on the facts of a given case, including the length and circumstances of the delay and the possibility of prejudice to the opposing party." 16 Kan. App. 2d at 660.

Whether a motion has been filed within a "reasonable time" is a question of fact and to be determined on a case-by-case basis: "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981).

In *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne*, 605 F.2d 648, 656 (2d Cir. 1979), the court indicated:

"Although the fact that a motion was made barely within the one-year time limit gives the court the power to entertain it, *as the delay in making the motion approaches one year there should be corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'* " (Emphasis added.)

We have considered the facts of this case in the light of the authorities cited above. Craig has given no compelling explanation of why he waited nine months after learning of the information to file his motion. At the very best, his explanation was that he was too busy attempting to put the feedlot back on its feet. This may be true, but every day he delayed, the possibility of restoring the status quo of January 9, 1992, diminished. We can find no valid explanation for the delay. Craig was, after all, represented by counsel during this period of time. We see no reason why counsel could not have filed the motion immediately after the true situation of the feedlot was discovered in March 1992. The law, however, charges Craig with the acts of his attorney, and the failure of his attorney to act in a timely fashion does not excuse the delay in the filing of the motion. See *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601 (7th Cir. 1986); *Pryor v. U.S. Postal Service*, 769 F.2d 281, 285-86 (5th Cir. 1985). We conclude that there is nothing in Craig's explanation for the delay that overcomes the interest in finality which must be sacrificed in order to grant his motion.

We also agree with the comments of the Second Circuit in the *Amoco Overseas Oil Co.* case cited above. This motion was filed one day in advance of the extreme limit of one year, and we agree that the closer to the extreme limit the motion is filed, the heavier the burden is to show that the delay was reasonable.

The trial court concluded that Craig had not carried that burden. We find nothing to indicate that this decision was erroneous.

It appears that either party would be prejudiced by an adverse ruling. Craig appears to have lost, at least for now, the cash flow he relied upon in agreeing to make the required payments. The current prejudice to Craig is somewhat ameliorated by the fact that the payments are spread out for 11 or 12 years. If his feedlot business should recover in the future, he will benefit from its past failure.

Marla has surely marked these funds for future living expenses. As we consider the issue, over two and one-half years have elapsed since the divorce. A judgment setting aside the decree would also sidetrack her future plans. She received no real estate, no cattle feeding operation, and no farm machinery to secure her future. She received only cash. If the cash is taken away, Marla is left with no ability to recover, as she received few other assets.

The issue of prejudice appears to be rather equally divided. This fact impels us towards accepting the judgment of the trial court.

The predicament which Craig is in is largely one of his own making. The property settlement agreement was not forced upon him by Marla, nor was it imposed upon the parties by the trial court. It was a freely and voluntarily entered into agreement made by two parties who were attempting to adjust their marital property rights. At the time the agreement was entered into, Craig was fully aware that the feedlot was undergoing a financial audit and admitted he knew there were problems with the operation. Despite this knowledge, he entered into the property settlement agreement which he now seeks to modify. After he gained knowledge of the true financial picture of the feedlot, he delayed filing a motion to modify for a period of nine months. He did so despite the fact that he appeared in court on at least one prior occasion to defend himself against a motion to cite him for contempt. He is unable to present a compelling reason to explain his delay. At least partially because of Craig's delay, the trial court was unable to restore the status quo as it existed on January 9, 1992, or to put the parties in the position in which they were when they separated. All of these factors were taken

into consideration in the trial court's denial of the motion to modify.

We are unable to conclude that the trial court abused its discretion in ruling that the motion to modify was not filed within a reasonable time. We are not the finder of fact. We gaze only at a cold, printed record, which does not give us the undefinable "feel" which a trial court has in resolving matters of this nature. The evidence in this matter is such that a decision either way would be justified. Given Craig's delay in filing his motion, his apparent knowledge of problems when the agreement was signed, and the impossibility of restoring the parties to where they were or should have been on January 9, 1992, we cannot say that the trial court's action was arbitrary, fanciful, or unreasonable. We cannot say that no reasonable person would have adopted the position taken by the trial court. We find ourselves faced with a factual situation in which strong arguments can be made for both parties. Under such circumstances, we recognize the superior position of the trial court to weigh all of the facts, and we affirm its decision in denying the motion to modify.

Affirmed.

GERNON, J., dissenting: I respectfully dissent from the majority opinion.

K.S.A. 60-260(b) allows a court to relieve a party from a final judgment under certain conditions with the requirement that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

We are required to interpret the last sentence of 60-260(b) and determine if the reasonable time requirement applies.

The majority states that the motion was filed within one year of the date of judgment and approximately nine months after Craig Larson learned of the fraud surrounding the management of a feedlot he and his family owned in Colorado. It should be noted that Marla J. Larson was also an officer and/or a director of the same feedlot; thus, she had some obligation to be involved in the financial dealings of the feedlot.

Although the record reflects that Craig knew there might be a problem with the feedlot and that an audit was ongoing at the

time of the divorce action, the record also reflects that he relied upon the advice of an attorney then representing him in going forward with signing the property settlement agreement.

There is nothing in the record to suggest that Craig or anyone else knew of the extent of the problem or that it was caused by the fraud of the manager of the feedlot. Both parties to this action, Craig and Marla, had an obligation as officers and/or directors of the feedlot corporation to be aware of the financial condition of this business entity.

The majority states that there was a $400,000 turnaround, with Craig relying upon the value of the feedlot or the profits therefrom to negotiate a settlement and pay under the terms of the settlement.

The trial court's justification for denying the motion is based upon difficulty in setting the matter for hearing and a finding that the property was under the exclusive control of Craig during the time the losses occurred. This conclusion is contrary to the record as I read it, given Craig's reliance upon the manager who committed fraud and the distance to the feedlot. The court also found that the motion was not timely made and that there was no way to put the parties back in the position they were on January 9, 1990.

I recognize the problem of putting the parties back where they were, but the essence of an equitable action ought to be to at least make that attempt, difficult though it might be.

It should also be noted that Craig changed attorneys between the time of the signing of the agreement and the divorce hearing and the time a motion was filed pursuant to K.S.A. 60-260.

Each party in a divorce action is entitled to an equitable portion of all property owned by the parties. *Smith v. Smith*, 5 Kan. App. 2d 117, 120, 612 P.2d 1257 (1980).

Courts are obligated pursuant to K.S.A. 1993 Supp. 60-1610(b)(1) to make a "just and reasonable division" of the marital assets. The trial court's obligation is to review the settlement agreement to insure that it meets the statutory standards of "valid, just and equitable." K.S.A. 1993 Supp. 60-1610(b)(3). If the court has approved the agreement and it is incorporated into a decree, the court has made a finding that the agreement was fair and equitable. However, if the underlying value of the property de-

tailed in an agreement is substantially misstated, unbeknownst to either of the parties as well as the court, through no fault of any of the parties but as the result of fraud, and the true value of the property is later revealed, the court's previous finding that the agreement was fair and equitable becomes subject to question and, under the facts here, being set aside.

The purpose of K.S.A. 60-260(b) is to allow a party relief from a judgment which is in error or otherwise improper. In my view, to deny application of K.S.A. 60-260(b) under the facts presented here, certainly a mistake, with newly discovered evidence, frustrates the intent and the proper application of K.S.A. 60-260(b). Divorce is an action in equity. In my view, to disallow the application of K.S.A. 60-260(b) under the facts and circumstances of this case is inequitable and undermines the future application of K.S.A. 60-260(b).