NOT DESIGNATED FOR PUBLICATION

No. 121,754

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS ex rel. SECRETARY, DEPARTMENT FOR CHILDREN AND FAMILIES,

and

R.M., A MINOR CHILD, by and through his MOTHER AND NEXT FRIEND, L.D.,
*Appellees*.

v.

ESTATE OF NICHOLAS SANDS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Opinion filed October 16, 2020. Affirmed.

*Christopher T. Wilson*, of Beam-Ward, Kruse, Wilson & Fletes, LLC, of Overland Park, for appellant.

*Robert E. McRorey*, of Olathe, for appellees R.M. and L.D.

Before MALONE, P.J., BUSER and POWELL, JJ.

PER CURIAM: This is an appeal by the Estate of Nicholas Sands (Estate) of the district court's judgment denying the Estate's motion to set aside a default judgment regarding the paternity of a child, R.M. Upon our review of the appellate briefs, record on appeal and after considering the parties' oral arguments, we find no error. Accordingly, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

L.D. gave birth to R.M. in November 2011. On October 3, 2014, the Secretary of the Kansas Department for Children and Families (DCF) filed a petition to determine paternity, claiming that Nicholas Sands was R.M.'s father. The petition also sought reimbursement of expenses incurred for R.M.'s care and sought an order of continuing child support. Sands was served with the petition five days after it was filed.

Despite service of the petition, Sands failed to timely answer the pleading and DCF moved for a default judgment. The district court held a hearing on December 2, 2014, but Sands did not appear in person or through counsel. Two days later, the district court filed a journal entry, which granted DCF's motion for default judgment and ruled that Sands was R.M.'s father.

On February 2, 2015, the district court held a status conference to establish a parenting plan. Sands appeared at the status conference, asked the district court not to provide him with parenting time, and stated that he would attempt to set aside the default judgment. L.D. was granted sole legal custody over R.M. and Sands was given no parenting time in accordance with his request.

Sands died in an automobile accident on August 24, 2017. Before his death, Sands paid a total of $486 in child support but never interacted with R.M. In the two and a half years before his death, Sands never moved to set aside the default judgment of paternity.

A wrongful death claim was filed by the Estate as a result of Sands' automobile accident. On July 11, 2018—about three and a half years after the district court entered default judgment—the Estate filed a motion to set aside the default judgment of paternity. Sands' mother, Kara Sands, was appointed as the administrator of the Estate. In its motion, the Estate argued that the district court should set aside the default judgment

2

under K.S.A. 2018 Supp. 60-260(b)(6) because the order was unconscionable. The Estate also sought an order for a posthumous paternity test to determine whether Sands was the biological father of R.M. Attached to the motion was a paternity test performed in 2012, which purported to show that Sands was not the biological father.

In October 2018, L.D. signed a stipulation in which she agreed that the district court should set aside the default judgment of paternity. In this stipulation, L.D. agreed that:

- Sands was not the biological father of R.M.
- The paternity test attached to the motion to set aside default judgment should be admitted and correctly showed that Sands was not the biological father of R.M.
- The district court should enter an order finding that Sands was not R.M.'s biological father.
- It is in the best interests of R.M. to set aside default judgment and find that Sands was not R.M.'s father.

The district court held a hearing on the motion to set aside default judgment on November 2, 2018. Contrary to her stipulation, L.D. said that she was not sure whether Sands was R.M.'s biological father. In fact, she testified that the biological father was unknown. L.D. explained that she gave DCF employees the names of two potential biological fathers:  Sands and Travis Mills. DCF first tested Mills—who was later murdered in December 2017—and excluded him as the biological father. DCF then attempted to contact Sands for DNA testing. DCF was unable to contact Sands and, therefore, filed the petition to determine paternity. At the conclusion of the hearing, the district court allowed the evidence to remain open to allow L.D. the opportunity to obtain legal counsel.

3

After obtaining counsel, L.D. filed a withdrawal of her previous stipulation. In the stipulation withdrawal, L.D. stated:

"3. I withdraw the previous stipulation and do not agree that the Court should set aside the Journal Entry of Judgment for Paternity . . . which was filed on or about December 14, 2014, and I specifically state that the finding that Nicholas Sands . . . is the biological father of [R.M.] was correct.

"4. I further specifically withdraw any stipulation that I have made which would indicate that Nicholas Sands was not the biological father of [R.M.], as it is my belief and understanding that Nicholas Sands was the biological father of [R.M.].

"5. I further withdraw my stipulation and previous agreement regarding the paternity test which was . . . attached to the Motion of the Estate to Set Aside the Paternity Finding. Specifically, I submit that the referenced Exhibit should not be admitted into evidence in this matter, and I state that the alleged negative finding of paternity set forth in that Exhibit is not correct.

"6. I further withdraw the stipulation and agreement which requested that the Court enter a specific finding that Nicholas Sands was not the biological father of my son, [R.M.]. I further submit that Nicholas Sands was the father of [R.M.] and that no order indicating to the contrary should be approved by the Court.

"7. I further state that the Stipulation that I previously signed on or about October 11, 2018, was not correct and was signed by me improvidently and it contains obviously incorrect information.

"8. I further state that attached hereto is a true copy of the paternity test results conducted as to Travis Mills, the only person (other than Nicholas Sands) who could have been the biological father of my son, and the test results show that Travis Mills, was not the biological father of my son."

Attached to the stipulation withdrawal was a copy of Mill's paternity test results performed under the direction of DCF, which showed that his probability of paternity was 0%.

4

In February 2019, the district court denied the Estate's request for genetic testing and set the case for argument regarding whether the default judgment should be set aside under K.S.A. 2018 Supp. 60-260(b)(6). Before oral argument, the Estate filed an affidavit signed by Kara Sands, which explained the circumstances of Sands' 2012 home paternity test and proffered reasons why the default judgment should be set aside. In the affidavit, Kara Sands stated, in part:

"4. Nicholas Sands told me, after the minor child was born, that he was not the father of the minor child.

"5. Nicholas Sands told me that a man named Tyler Meeks was the father of the minor child.

"6. That Nicholas Sands had no relationship with the minor child and did not exercise any parenting contact.

. . . .

"8. That I gathered with Nicholas Sands, [L.D.], and [T.D.], [L.D.'s] mother, to do a paternity test. All five of us wanted to know if Nicholas was the father of the minor child. The samples were provided and sent to the company for determination by UPS. I was with Nicholas when the results came back, indicating that he was not the father. I was with Nicholas when he notified [L.D.] of the paternity test results.

. . . .

"11. Nicholas Sands was incarcerated when the December 2, 2014 hearing was held, case no. 12CR2578.

"12. Nicholas learned of the December 2, 2014 hearing after it was held, when he opened his mail.

. . . .

"14. [L.D.] has referred to Travis Mills as the father of the minor child.

. . . .

"18. It is extremely important for all family members involved that a proper paternity determination be made related to the minor child.

. . . .

"20. It is unjust and unreasonable for the minor child to be placed in a position of believing that an individual is his father, when that individual is not his father. It is

5

equally as unjust and unreasonable to leave this child to believe that he has family (Nicholas Sands' family) that is not really his family.

"21. I would ask the court to put itself in my position, as a parent. You have a potential grandchild that you know is not your grandchild, but a document from the court claims him to be your grandchild. All this while the court has at its immediate disposal the ability to determine the paternity of the child to provide peace to all involved."

After the hearing, the district court denied the Estate's motion to set aside the default judgment under K.S.A. 2018 Supp. 60-260(b)(6). The district court found that the motion was not filed in a reasonable time and Sands' failure to personally take action to set aside the judgment appeared like a choice to accept the judgment. The district court also determined that setting aside the judgment would not be in the furtherance of justice, explaining:

"While there may be value in [R.M.] knowing with certainty that Mr. Sands is or is not his genetic father, it is outweighed by his interest in support (which might be available from insurance proceeds), in inheritance rights, and in finality. Family bonds will not be impacted. There is no special medical need. [L.D.] is in a better position to advocate for her son's needs than the Estate. [R.M.'s] needs and interests must take precedence over those of Mr. Sands' surviving family."

Finally, the district court found that L.D.'s testimony and statements in the stipulation withdrawal were more reliable than those in the original stipulation. The Estate filed a timely appeal.

ANALYSIS

On appeal, the Estate contends the district court abused its discretion by denying its motion to set aside the default judgment of paternity. In particular, the Estate complains that the district court erred in not allowing it to present genetic evidence in support of its motion, considering certain factors to the detriment of fulfilling substantial

justice, and unreasonably denying the Estate's motion. For its part, the State argues that the Estate's delay in filing the motion was unreasonable under K.S.A. 2018 Supp. 60-260(b)(6), and the Estate failed to prove the factors necessary to establish good cause to set aside the judgment of paternity.

At the outset, we briefly summarize our standard of review and the legal standards relating to setting aside default judgments. The decision to set aside a default judgment rests in the discretion of the district court and will not be disturbed on appeal without a showing of abuse of discretion. *Garcia v. Ball*, 303 Kan. 560, 565-66, 363 P.3d 399 (2015). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court (2) it is based on an error of law; or (3) it is based on an error of fact. 303 Kan. at 566.

"Default judgments are not favored by the law but are necessary when the inaction of one party frustrates the administration of justice." *First Management, Inc. v. Topeka Investment Group, LLC*, 47 Kan. App. 2d 233, 239, 277 P.3d 1150 (2012). When considering a motion to set aside a default judgment, courts should resolve any doubt in favor of the motion so cases may be decided on their merits. *Garcia*, 303 Kan. at 568.

Under K.S.A. 2018 Supp. 60-255(b), a district court may set aside a default judgment for any of the grounds listed in K.S.A. 2018 Supp. 60-260(b). The first five subsections of K.S.A. 2018 Supp. 60-260(b) permit a district court to set aside a judgment for:

"(1) Mistake, inadvertence, surprise or excusable neglect;
"(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;

7

"(3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;

"(4) the judgment is void;

"(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable."

The Estate did not rely on any of the five grounds just listed, but only sought relief under K.S.A. 2018 Supp. 60-260(b)(6)—a catch-all provision allowing a district court to set aside a judgment for "any other reason that justifies relief."

Important to the resolution of this appeal, a motion to set aside a default judgment under K.S.A. 2018 Supp. 60-260(b)(6) must be made within a "reasonable time." K.S.A. 2018 Supp. 60-260(c)(1); *In re Marriage of Thompson*, 17 Kan. App. 2d 47, Syl. ¶ 4, 832 P.2d 349 (1992). "District courts have the responsibility under K.S.A. [2018] Supp. 60-260(c)(1)] to make a determination regarding whether a motion to set aside the judgment was filed within a reasonable time after the judgment or order was entered." *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1108, 361 P.3d 515 (2015).

The district court denied the Estate's motion to set aside judgment, in part, because the motion was not filed in a reasonable time. Acknowledging that the significance of the paternity issue could rebut the interest in finality and any foreseeable prejudice to the parties, the district court found the Estate "fails to establish any reason, good or otherwise, for the failure to file the motion earlier." The district court then concluded:

"Mr. Sands was fully aware in February of 2015 of the grounds upon which he could rely to pursue a motion. No reason for his failure to act is established. Forty-one months from announcing his intention to request reopening the judgment to finally doing so is not a reasonable time."

Inexplicably, the Estate does not challenge the district court's finding that its motion to set aside the default judgment was not filed within a reasonable time. Moreover, the Estate presents no argument on appeal suggesting that the motion was timely filed under the circumstances.

This omission by the Estate is fatal to its appeal. First, an issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Second, when a district court's decision is based on alternative grounds, an appellant's failure to address one of the alternative bases is a sufficient reason to deny the appeal. *Sauls v. McKune*, 45 Kan. App. 2d 915, 918, 260 P.3d 95 (2011). Since the district court's finding that the K.S.A. 2018 Supp. 60-260(b)(6) motion was not filed in a reasonable time adequately supports its denial, we decline to review the other reasons provided by the district court which are contested by the Estate.

For the sake of completeness, however, we will consider—assuming the Estate had briefed the issue—whether the district court abused its discretion in concluding that the Estate's motion should be denied because it was not filed in a reasonable time.

"What constitutes a 'reasonable time' within which to file a motion under K.S.A. 60-260(b) is a question left to the discretion of the trial court." *In re Marriage of Larson*, 257 Kan. 456, Syl ¶ 3, 894 P.2d 809 (1995). To determine whether a motion to set aside judgment was filed in a reasonable time, the court measures the time from when the movant came into possession of facts justifying the relief to when the movant filed the motion seeking relief. *In re Estate of McLeish*, 49 Kan. App. 2d 246, 260, 307 P.3d 221 (2013). And whether the motion was filed in a reasonable time "depends upon the facts of each case, considering the interest in finality, the reasons for the delay, the ability of a litigant to learn earlier of the grounds relied upon, and any prejudice to the parties." *In re Marriage of Larson*, 257 Kan. 456, Syl ¶ 3.

9

In this case, Sands became aware of the paternity action when he was served on October 8, 2014, only five days after the filing of the petition. Sands failed to answer the petition, however, which resulted in the default judgment ordered on December 2, 2014. Only two months later, on February 2, 2015, Sands personally participated in a status conference where he advised the district court that he intended to set aside the default judgment and did not want the court to award him any parenting time with R.M. Subsequently, Sands was credited with paying a total of $486 in child support. He died on August 24, 2017.

The bottom line: With full knowledge of the paternity action, default judgment, and resultant child support orders, Sands did not file a motion to set aside the default judgment during the more than two and a half years before his untimely death. On July 11, 2018—three and a half years after the district court entered default judgment—the Estate finally filed a motion to set it aside. Importantly, our review of the record on appeal does not reveal any reason—let alone a good reason—for Sands' failure to file the motion while he was alive. Moreover, the record is bereft of any reason for the Estate's almost one year delay after Sands' death in filing the motion, especially given the administrator's personal knowledge of the paternity allegation involving her son, years before the filing of the paternity action, as averred in her affidavit.

Kansas caselaw precedent supports the district court's use of discretion in denying the Estate's motion to set aside the default judgment. Our court addressed a relevant paternity case in *Wilson v. Wilson*, 16 Kan. App. 2d 651, 659-61, 827 P.2d 788 (1992), and held that the district court abused its discretion by granting Michael Wilson's motion to set aside a paternity judgment under K.S.A. 60-260(b)(6).

In *Wilson*, Michael became aware in 1982 that he was incapable of having children, but waited almost six years before he moved to set aside part of a divorce decree, stating that he was the child's father. With "no hesitancy," the *Wilson* court

determined that Michael's motion was not filed in a reasonable time, finding that he had a duty to take legal steps to protect his interest and he provided no good reason for the six-year delay. 16 Kan. App. 2d at 660. The court also reasoned that the delay would be prejudicial to the child because, while Michael and the child had no father-son relationship, the child was led to believe for six years that Michael was his biological father. 16 Kan. App. 2d at 661; see *In re Marriage of Bowers*, 23 Kan. App. 2d 641, 645-46, 933 P.2d 176 (1997) (A motion filed under K.S.A. 60-260(b)(6) "must be filed within a reasonable time. . . . [A]bsent extenuating circumstances, 4 years is not a reasonable time.").

While the six-year delay in *Wilson* and four-year delay in *Marriage of Bowers* is longer than the three-and-a-half-year delay in this case, Kansas courts have found that a reasonable time to file a motion under K.S.A. 60-260(b) expires earlier than the delay in our case. For example, in *In re Marriage of Larson*, our Supreme Court found that a district court did not abuse its discretion by finding that a K.S.A. 60-260(b) motion filed nine months after discovering the facts justifying relief was an unreasonable delay. 257 Kan. at 465-66. The movant reasoned the nine-month delay occurred because: (1) he had written to his attorney and the judge, but no one helped him; (2) he was working hard to keep his business from going under; and (3) he was uncertain whether his business would recover from the losses which justified the relief under K.S.A. 60-260(b). However, our Supreme Court determined that none of the movant's reasons justified a finding that the district court abused its discretion by denying his motion. 257 Kan. at 466. See *Brand Investments, LLC v. Adams*, No. 108,341, 2013 WL 3792092, at *11 (Kan. App. 2013) (unpublished opinion) (K.S.A. 60-260[b][6] motion filed more than two years after entry of foreclosure decree was not reasonable when the movants "never offered an explanation for their delay in seeking relief under this basis.").

In this case, reasonable persons could agree that the motion to set aside judgment was not filed in a reasonable time. Sands was personally aware of the paternity action

when he was served on October 8, 2014. He was also fully knowledgeable that the district court had ruled that he was R.M.'s father and was legally responsible for the support of R.M. as of February 2, 2015. Yet, Sands took no action and, as the district court properly found: "No reason for his failure to act is established." Consequently, we are left to speculate as to the reason, if any. But speculation is not permissible, proof is required. Sand's omission, coupled with the Estate's unhurried response, resulted in a three-and-a-half-year delay before the Estate sought to nullify the district court's judgment establishing R.M.'s parentage.

In conclusion, a party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017). We are persuaded the Estate has failed in this endeavor. The district court's discretionary finding denying the motion to set aside the judgment was legally proper and supported by substantial competent evidence. Accordingly, we find the district court did not err in denying the motion because it was not filed in a reasonable time.

Affirmed.