# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-2121

_____

| | |
|---|---|
| Stokors S.A., | * |
| | * |
| Appellant, | * |
| | * |
| Mission Bank, | * |
| | *   Appeal from the United States |
| Plaintiff, | *   District Court for the |
| | *   Western District of Missouri. |
| v. | * |
| | * |
| Richard E. Morrison, | * |
| | * |
| Appellee. | * |

_____

Submitted: November 17, 1997
Filed: June 26, 1998

_____

Before RICHARD S. ARNOLD,[1] Chief Judge, and McMILLIAN and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

---

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

Richard Morrison owed a judgment of $4,167,540.07, plus interest, to Stokors S.A. and the Mission Bank on a guaranty of a loan. Morrison filed a motion under Federal Rule of Civil Procedure 60(b) for satisfaction of the judgment. The district court granted Morrison's motion, holding under Rule 60(b)(5) that it was no longer equitable that Morrison's money judgment should have prospective application. Stokors now appeals, and we reverse.

## I.

On December 24, 1985, the Mission Bank loaned $3,000,000 to the Elms Inn Partners. The loan was secured by an industrial revenue bond issued by the City of Excelsior Springs, Missouri, which in turn was secured by the Elms Hotel in Excelsior Springs. In addition, the loan was absolutely and unconditionally personally guaranteed by Morrison. See Guaranty, Dec. 24, 1985, reprinted in Appellant's App. at 11. The Elms Inn Partners defaulted on the loan, and, as of June 1, 1994, $4,167,540.07 in principal and interest was due and owing under the bond.

The Mission Bank assigned part of its interest in Morrison's guaranty to Stokors, a Swiss investment management firm. Stokors and the Mission Bank then brought an action against Morrison in the district court to enforce Morrison's guaranty. On May 8, 1995, the district court granted summary judgment against Morrison, and awarded Stokors and the Mission Bank a judgment of $4,167,540.07, plus interest accruing from June 1, 1994. See Order (May 8, 1995) at 6-7, reprinted in Appellant's App. at 107-08. Morrison's appeal of this grant of summary judgment was dismissed by this Court as untimely filed. See Stokors, S.A. v. Morrison, No. 95-2530, slip op. at 1 (8th Cir. July 26, 1995) (per curiam).

Meanwhile, the successors in interest to the Elms Inn Partners were in bankruptcy. In addition to the $4,167,540.07 debt owed to the Mission Bank, the bankruptcy estate was indebted to the Federal Deposit Insurance Corporation (FDIC)

for $9,575,225.84, as successor in interest to two failed banks who were also bondholders on the project. The bankruptcy trustee was unsuccessful in disposing of the real property that secured the debts owed to the Mission Bank and the FDIC, and on July 28, 1995--several months after the district court reduced Morrison's guaranty to judgment, and after this Court dismissed Morrison's untimely appeal of that judgment--the Mission Bank and the FDIC assigned all of their interests in the debt owed to them to the City of Excelsior Springs. In making this assignment, the Mission Bank explicitly retained

> [a]ny and all rights, title and interests in those certain guarantys signed and delivered by Clifford Roth and/or Richard Morrison to The Mission Bank and/or Metro North State Bank, dated December 24, 1985, by which Messrs. Roth and Morrison guaranteed repayment of the 1985 Elms Bond indebtedness to The Mission Bank and/or Metro North State Bank.

Assignment Agreement (July 28, 1995) at 1, Ex. B, reprinted in Suggestions in Supp. of Appellant's Mot. to Expand the R. (July 30, 1997) at Supplemental R. 6, 27.[2] In exchange for this assignment, with a face value of $13,742,765.91, the Mission Bank and the FDIC together received $411,000. See id. at 2, reprinted in Suggestions in Supp. of Appellant's Mot. to Expand the R. at Supplemental R. 7. The record does not, however, reflect how this amount was distributed between the Mission Bank and the FDIC.

---

[2]Stokors has moved to expand the record on appeal, and Morrison--who has agreed that the submitted materials are relevant and accurate--has made no objection to this motion. Because the district court granted Morrison's Rule 60(b) motion without an evidentiary hearing, and because we conclude that the expanded record allows a more complete understanding of the events at issue in this matter, we grant the motion to expand the record.

On March 12, 1996, the City of Excelsior Springs foreclosed on the property securing the total debt of $13,742,765.91. Although the City Commissioners appraised the property as having a value of $675,000.00, see Report of Commissioners (Mar. 19, 1996) at 5, reprinted in Suggestions in Supp. of Appellant's Mot. to Expand the R. at Supp. 42, during the foreclosure sale the City bid the same amount as the debt.[3] Accordingly, the City of Excelsior Springs gained title to the property--valued at $675,000--and cleared the underlying debt, and the Mission Bank gained an unknown portion of $411,000.[4]

Following the foreclosure sale, Morrison brought this motion under Federal Rule of Civil Procedure 60(b) for satisfaction of his judgment to Stokors and the Mission Bank. Morrison's legal theory was that, because the underlying debt had been satisfied in the foreclosure sale, the guaranty had also been satisfied. See Mem. in Supp. of Def.'s Rule 60 Mot. for Satisfaction of J. (June 18, 1996) at 3-4, reprinted in Appellant's App. at 132-33.

The district court disagreed with Morrison's legal argument and held that, under Missouri law, the satisfaction of an underlying debt does not satisfy a judgment on the guaranty of the loan. See Op. and Order (Mar. 18, 1997) at 10, reprinted in Appellant's Add. at 10.[5] The district court nevertheless granted Morrison's motion for Rule 60(b)

---

[3]It appears that the City of Excelsior Springs's bid at the foreclosure sale "was in practical effect only a paper transaction, a bookkeeping device for obtaining title to land." Regional Inv. Co. v. Haycock, 723 F.2d 38, 41 (8th Cir. 1983).

[4]The City of Excelsior Springs subsequently sold the property to a redeveloper for $100, in exchange for a promise to redevelop the property.

[5]Morrison has not cross-appealed, or even presented a cogent argument, that the district court erred in its construction of Missouri law. Accordingly, we do not consider this issue on appeal. See, e.g., Bethea v. Levi Strauss and Co., 916 F.2d 453, 455 & n. 6 (8th Cir. 1990) (noting that, while an appellate court "does maintain

relief. See id. at 15, reprinted in Appellant's Add. at 15. Relying on Federal Rule of Civil Procedure 60(b)(5), the district court concluded that prospective application of the monetary judgment against Morrison would no longer be equitable. See id. at 14-15, reprinted in Appellant's Add. at 14-15. Accordingly, the district court held that, because Mission Bank had assigned its interest in the underlying debt to the City of Excelsior Springs, and because the City of Excelsior Springs had satisfied the debt at the foreclosure sale, the $4,167,540.07 judgment against Morrison would not be enforced. Stokors now appeals.

## II.

We review the district court's grant of Rule 60(b) relief for an abuse of discretion. See Schultz v. Commerce First Fin., 24 F.3d 1023, 1024 (8th Cir. 1994). "The movant must establish its right to such relief by clear and convincing evidence." United States v. Denham, 817 F.2d 1307, 1309 (8th Cir. 1987). "Generally, such relief is granted only when new and unforeseen conditions cause extreme and unexpected hardship so that the decree is oppressive." ARC v. Sinner, 942 F.2d 1235, 1239 (8th Cir. 1991) (quotations and citations omitted). A district court necessarily abuses its discretion if it bases its decision on an erroneous view of controlling law. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990).

Federal Rule of Civil Procedure 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party
> or a party's legal representative from a final judgment, order, or

---

broad discretion with respect to legal issues" and "may, sua sponte, apply the correct rule of law to an issue properly before it even though neither party argued it at either the district or appellate level," the general rule is that "[a] federal appellate court's scope of review is limited to issues raised both below and on appeal." (emphasis added)).

proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, <u>or it is no longer equitable that the judgment should have prospective application</u> . . . .

(emphasis added). In this case, the district court held that the prior judgment had not been satisfied, and there was no allegation that a prior judgment had been reversed. Accordingly, the only basis for the district court's grant of Rule 60(b)(5) relief in this case was the district court's conclusion that it was not equitable for a final money judgment to have prospective application.

Most courts have agreed that a money judgment does not have prospective application, and that relief from a final money judgment is therefore not available under the equitable leg of Rule 60(b)(5). In <u>Maraziti v. Thorpe</u>, 52 F.3d 252, 254 (9th Cir. 1995), the court noted that:

Virtually every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect. That a court's action has continuing consequences, however, does not necessarily mean that it has prospective application for the purposes of Rule 60(b)(5). The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions. . . . The construction of the Rule sought by [the movant], which apparently is to the effect that a judgment has prospective effect so long as the parties are bound by it, would read the word "prospective" out of the rule.

(quotations, citations, and alterations omitted); <u>see also</u> <u>DeWeerth v. Baldinger</u>, 38 F.3d 1266, 1275 (2d Cir. 1994) (interpreting <u>United States v. Swift & Co.</u>, 286 U.S. 106 (1932), and noting that, "[i]n practical terms, these standards mean that judgments involving injunctions have 'prospective application,' while money judgments do not"); <u>Gibbs v. Maxwell House</u>, 738 F.2d 1153, 1155-56 (11th Cir. 1984) (per curiam) ("The

judgment of dismissal in this case was not prospective within the meaning of 60(b)(5). It was final and permanent. That plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him." (citations omitted)); Marshall v. Board of Ed., 575 F.2d 417, 425 (3d Cir. 1978) (agreeing that "Rule 60(b)(5) 'does not cover the case of a judgment for money damages'" (quoting Ryan v. United States Lines Co., 303 F.2d 430, 434 (2d Cir. 1962))).

The district court cited to several cases, including one from this Court, to sustain its conclusion that Rule 60(b)(5)'s equity leg can be used to relieve a party from a final money judgment. See Hansen v. United States, 340 F.2d 142 (8th Cir. 1965); Bros Inc. v. W.E. Grace Mfg. Co., 320 F.2d 594 (5th Cir. 1963). Neither of these cases, however, offer much support for the district court's interpretation of Rule 60(b)(5). In Hansen, this Court explicitly relied on Rule 60(b)(6), rather than Rule 60(b)(5), to deny a party relief from a money judgment. See Hansen, 340 F.2d at 143. While Bros Inc. did involve relief from a money judgment under Rule 60(b)(5), see 320 F.2d at 610, the case has had little persuasive value even in the Fifth Circuit. See McDonald v. Oliver, 642 F.2d 169, 171 (5th Cir. 1981) ("[A] judgment for money damages, which was awarded and is under review in this case, offers a present remedy for a past wrong as contrasted with any judgment that has an on-going or prospective effect such as an injunction. Since the third part of Rule 60(b)(5) applies only to prospective judgments, it is not appropriate to the instant case.").

In this case, while the judgment against Morrison may be "prospective" to the extent that he has failed to pay it in a timely manner, it is nevertheless a final order and is not "prospective" for purposes of Rule 60(b)(5). We conclude that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment, and hold that the district court abused its discretion in granting relief to Morrison under this provision. We accordingly vacate the district court's grant of satisfaction of judgment in this matter, and reinstate the guaranty judgment.

## III.

In originally seeking summary judgment on Morrison's liability under the guaranty, Stokors and Morrison represented to the district court that "there is no risk of duplicative liability as all parties with interest in the underlying debt and the Guaranty will be bound by any recovery on the Guaranty." Reply to Def.'s Mem. in Opp'n to Mot. for Summ. J. (Mar. 29, 1995) at 3, reprinted in Appellant's App. at 78. Contrary to this position, however, the Mission Bank has received some portion of $411,000 for the debt that it sold to the City of Excelsior Springs. The City of Excelsior Springs, in turn, redeemed $675,000 worth of property, some of which secured the debt that Morrison had guaranteed. We thus conclude that there is a risk of duplicative recovery in this case.

At oral argument, Stokors conceded that any amount received by the Mission Bank for its assignment to the City of Excelsior Springs would constitute a double recovery, and that a set-off from the judgment against Morrison for that amount would be proper. In supplemental briefings, Stokors went further and agreed to a set-off of $675,000 (the full value of the property that was redeemed at the foreclosure sale, some of which had secured the debt guaranteed by Morrison) against the judgment against Morrison on the guaranty. See Appellant's Supplemental Br. at 5. In his supplemental briefing, however, Morrison has shown no indication of accepting this stipulation. Accordingly, we remand this matter to the district court for the sole purpose of making a factual determination--with Morrison bearing the burden of proof--of the proper amount of monetary set-off, if any, that Morrison is entitled to against Stokors in light of the amount paid to the Mission Bank by the City of Excelsior Springs and the value of the property redeemed by the City of Excelsior Springs that had secured the loan guaranteed by Morrison. The judgment against Morrison on the guaranty should then be reduced by that amount. See Fed. R. Civ. P. 60(b)(6).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.