(204 P.3d 1167)
No. 100,114

FIRST NATIONAL BANK IN BELLEVILLE, *Appellee,* v. SANKEY MOTORS, INC., a Kansas Corporation, RONALD SANKEY, RHONDA SANKEY, *Defendants,* CHRYSLER FINANCIAL COMPANY, LLC, *Appellant,* and REPUBLIC COUNTY, KANSAS, *Defendant.*

Opinion filed April 3, 2009.

*Robert Minter* and *Creath L. Pollak*, of Minter & Pollak, of Wichita, for appellant.

*Nathanael Berg*, of Hampton & Royce, L.C., of Salina, for appellee.

Before BUSER, P.J., ELLIOTT and GREEN, JJ.

GREEN, J.: Chrysler Financial Company, LLC, n/k/a Daimler-Chrysler Financial Services Americas, LLC (Chrysler), appeals from the trial court's judgment denying Chrysler's motion to set aside the default judgment for $80,700 entered against it and in favor of First National Bank in Belleville (Bank). First, Chrysler argues that the trial court abused its discretion in not setting aside the default judgment under K.S.A. 60-260(b)(1) or (b)(5). Nevertheless, we agree with the trial court that Chrysler failed to show that there was excusable neglect to warrant setting aside the default judgment under K.S.A. 60-260(b)(1). Moreover, K.S.A. 60-260(b)(5) is inapplicable to this case because the Bank's money judgment against Chrysler did not have prospective application and because there was no change in conditions occurring after the entry

of default judgment that would make continued enforcement of the judgment inequitable.

Next, Chrysler contends that because the damages requested in the Bank's petition were unliquidated, the Bank's failure to comply with Supreme Court Rule 118 (2008 Kan. Ct. R. Annot. 200) makes the default judgment voidable. We agree with Chrysler's argument. There is nothing in the record to establish the date on which the damages claimed in the Bank's petition became due and the actual amount that Chrysler owed the Bank. As a result, we determine that the damages claimed in the Bank's petition represent an unliquidated amount. The Bank's failure to comply with Supreme Court Rule 118(d) in notifying Chrysler of its motion for default judgment renders the default judgment voidable. Because Chrysler, the named defendant in this case, has successfully challenged the entry of default judgment, the judgment is declared void. Accordingly, we reverse and remand.

In 2004, the Bank entered into a financing arrangement with Ronald and Rhonda Sankey and Sankey Motors, Inc. (Dealership), in which the Bank provided operating funds and purchase money for automobiles and real property for the Dealership. The Bank secured this financing arrangement with promissory notes, various mortgages, and Uniform Commercial Code (UCC) filings. The UCC filings included, among other things, a security interest in the Dealership's accounts receivable. The Sankeys and the Dealership eventually defaulted on their financing arrangement with the Bank.

On January 26, 2006, the Bank sued the Dealership; the Sankeys; Chrysler; and Republic County, which held a tax lien against certain real property owned by the Dealership. In Count II of its petition, the Bank claimed that the Dealership had an $80,700 account receivable due to it by Chrysler. The Bank asked that Chrysler be ordered to pay the outstanding balance of the account receivable. In addition, the Bank asked for a money judgment against the Sankeys and the Dealership; for rulings regarding the Bank's interests in certain real and personal property; and for the sale of the real and personal property.

Chrysler's registered agent was served with the petition. Nevertheless, Chrysler failed to answer the Bank's petition or to file any other responsive pleading in the case. On April 24, 2006, the Bank moved for default judgment against Chrysler. The Bank mailed Chrysler a copy of its motion for default judgment by regular mail. The trial court entered a default judgment against Ronald Sankey and the Dealership on June 6, 2006. The journal entry of default judgment against Sankey and the Dealership provided that Chrysler was in default but that the Bank's claim against Chrysler would be determined at a separate time.

Apparently, on June 6, 2006, a subpoena was sent to Chrysler requesting all of its records regarding its contractual relationship with the Dealership. Chrysler did not respond to the subpoena. On June 12, 2006, a second copy of the motion for default judgment was sent to Chrysler via its registered agent. The Bank also attempted to contact an individual from Chrysler through Chrysler's automated voice answering system.

The trial court entered a default judgment against Chrysler on July 28, 2006. Although the journal entry of default judgment indicates that an evidentiary hearing was held on Chrysler's motion for default judgment, there is no transcript of this hearing in the appellate record. In awarding the Bank judgment of $80,700 plus interest, the journal entry provides:

"5. The Court generally finds in favor of Plaintiff and finds that the allegations of First National Bank of Belleville's Petition are true and correct.

"6. Defendant Sankey Motors, Inc., has an account receivable due to it by Defendant Chrysler Financial Company, LLC in the amount of $80,700.00."

The trial court determined that the Bank had a perfected security interest and was entitled to the account receivable from Chrysler. A copy of the journal entry was sent to Chrysler's registered agent by regular mail.

The Bank later contacted another local Chrysler dealership regarding the best way to contact an attorney for it. Thereafter, a Chrysler attorney contacted the Bank and requested a copy of the legal proceedings. A complete copy of the legal proceedings was sent to Chrysler's attorney on September 28, 2006.

On February 13, 2007, Chrysler moved to set aside the default judgment entered against it. Chrysler acknowledged that service of process had been made on its registered agent. Nevertheless, Chrysler argued that the default judgment should be set aside based on excusable neglect under K.S.A. 60-260. Chrysler asserted that the registered agent miscoded the action as a foreclosure action. Therefore, all pleadings had been forwarded to the wrong Chrysler service center and mistakenly designated as related to foreclosure.

Chrysler further maintained that because it had no judgment against the defendants or claims that it wished to make in the foreclosure action, it had taken no action in the lawsuit. Chrysler further argued that it had a valid defense to the lawsuit because there was no evidence that Chrysler had any liability. Chrysler asserted that the Bank had sued the wrong entity as part returns are an obligation of the manufacturer or supplier, which presumably would be the separate entity of Chrysler Corporation or Daimler Chrysler Corporation. Moreover, Chrysler argued that the Bank's claim against it appeared to be for unliquidated damages and that the Bank's failure to comply with Supreme Court Rule 118 (2008 Kan. Ct. R. Annot. 200) rendered the default judgment voidable.

The Bank filed a written objection to Chrysler's motion to set aside the default judgment. After holding a nonevidentiary hearing, the trial court denied Chrysler's motion to set aside the default judgment. The trial court determined that Chrysler could not meet its burden to establish excusable neglect in its decision to not respond to the Bank's petition and other documentation. The trial court further determined that Supreme Court Rule 118(d) had no application to the instant case because the specific sum of $80,700 recited in the petition represented liquidated damages. Moreover, the trial court noted that Chrysler had been notified by mail that the Bank had intended to proceed to obtain a default judgment. The trial court found that the default judgment was not entered until 3 months later, which gave Chrysler ample opportunity to investigate and respond to the Bank's motion for default judgment.

I. *Did the trial court abuse its discretion in not setting aside the default judgment under K.S.A. 60-260(b)?*

First, Chrysler argues that the trial court abused its discretion in not setting aside the default judgment under K.S.A. 60-260(b). "In determining whether to set aside a default judgment, a court should resolve any doubt in favor of the motion so that cases may be decided on their merits. [Citation omitted.]" *Bazine State Bank v. Pawnee Prod. Serv., Inc.*, 245 Kan. 490, 495, 781 P.2d 1077 (1989), *cert. denied* 495 U.S. 932 (1990). Nevertheless, a decision to set aside a default judgment rests within the discretion of the trial court and will be disturbed only upon a showing of abuse of discretion. *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, 396, 808 P.2d 881 (1991). An abuse of discretion will be found only when no reasonable person would take the view of the trial court. *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008).

K.S.A. 60-260(b) states in relevant part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken."

In interpreting K.S.A. 60-260(b), our Supreme Court has stated that a motion to set aside a default judgment may be granted whenever the court finds the following: "(1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a willful act." *State ex rel. Stovall v. Alivio*, 275 Kan. 169, Syl. ¶ 2, 61 P.3d 687 (2003). An appellant's failure to show all three elements dooms the appeal. 275 Kan. at 173.

Here, the trial court determined that Chrysler was unable to meet the excusable neglect element because Chrysler had chosen not to respond to the Bank's petition and to the Bank's other documents which it served on Chrysler. Leading to its decision, the trial court relied on *Producers*, 15 Kan. App. 2d 393. In *Producers*, default judgments were granted to the plaintiff on its petitions filed in three different counties against the defendant. Although the defendant had been served with the petitions, the defendant chose to ignore them, concluding that they were mechanics' lien foreclosure petitions and did not seek money damages against the defendant. The defendant received no other pleading or documentation in the case before the default judgments were entered. After the default judgments were entered, the defendant received a letter from the plaintiff demanding payment of its judgments. The defendant then moved to set aside the default judgments under K.S.A. 60-260(b) for mistake, inadvertence, or excusable neglect. Finding no excusable neglect, the trial court denied the defendant's motion to set aside the default judgments.

On appeal, this court in *Producers* found no abuse of discretion in the trial court's determination that there was not excusable neglect. 15 Kan. App. 2d at 397. This court noted that the petition stated a claim for a money judgment and that the defendant simply examined the petition and concluded it sought foreclosure of the liens without seeking legal counsel or further information from the plaintiff. This court concluded that the defendant had failed to show that its defaults were caused by excusable neglect. 15 Kan. App. 2d at 397.

The facts of this case are nearly identical to *Producers* in that the defendants in both cases were properly served with petitions that requested money judgments against the defendants. Additionally, the defendants in both cases examined the petitions and mistakenly identified them as relating to foreclosure actions and chose not to file responsive pleadings. Moreover, in the instant case, Chrysler was sent additional documentation in the action, including a subpoena for records and the motion for default judgment. Nevertheless, Chrysler did not file anything in the action or seek any information from the Bank until after the Bank attempted to con-

tact Chrysler to enforce its money judgment. Under those circumstances, the trial court properly determined that there was no excusable neglect to warrant setting aside the Bank's default judgment against Chrysler.

Nevertheless, Chrysler maintains that the trial court should have set aside the default judgment under K.S.A. 60-260(b)(5), which allows relief if it is no longer equitable that the judgment should have prospective application. Chrysler argues that it would be inequitable to let the judgment stand when Chrysler did not owe any money to the Dealership, the Sankeys, or the Bank. Chrysler points out that it presented evidence to the trial court that it was not the proper party that owed money to the Dealership or the Sankeys for part returns.

Although the Bank contends that this argument was never presented to the trial court, Chrysler correctly points out that it was contained in its request for hearing on its motion to set aside the default judgment that was filed with the trial court.

In arguing that K.S.A. 60-260(b)(5) is inapplicable here, the Bank cites the federal case of *Stokors S.A. v. Morrison*, 147 F.3d 759 (8th Cir. 1998), which has interpreted Federal Rules of Civil Procedure 60(b)(5). Because Rule 60(b) of the Federal Rules of Civil Procedure is virtually identical to K.S.A. 60-260(b), the federal decisions and the treatises interpreting this rule provide guidance to this court's interpretation of K.S.A. 60-260(b)(5). See *Giles v. Russell*, 222 Kan. 629, 632, 567 P.2d 845 (1977); *In re Marriage of Larson*, 19 Kan. App. 2d 986, 990, 880 P.2d 1279 (1994), *aff'd* 257 Kan. 456, 894 P.2d 809 (1995).

In *Stokors*, the defendant owed a money judgment of over $4 million. The federal district court granted the defendant's motion for satisfaction of the judgment under Rule 60(b). The court held under Rule 60(b)(5) that it was no longer equitable that the money judgment should have prospective application. The Eighth Circuit Court of Appeals reversed. The court noted that most courts have agreed that "a money judgment does not have prospective application, and that relief from a final money judgment is therefore not available under the equitable leg of Rule 60(b)(5)." 147 F.3d

at 762. The court quoted *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995), and it stated:

" 'Virtually, every court order causes at least some reverberations into the future, and has, in that literal sense, some prospective effect. That a court's action has continuing consequences, however, does not necessarily mean that it has prospective application'for the purposes of Rule 60(b)(5). The standard used in determining whether a judgment has prospective application is whether it is executory or involves the supervision of changing conduct or conditions. . . . The construction of the Rule sought by [the movant], which apparently is to the effect that a judgment has prospective effect so long as the parties are bound by it, would read the word 'prospective' out of the rule.' " 147 F.3d at 762.

The court then cited numerous federal cases that have recognized that money judgments do not have prospective application and do not come within Rule 60(b)(5). See *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994) (interpreting *United States v. Swift & Co.*, 286 U.S. 106, 76 L. Ed. 2d 999, 52 S. Ct. 460 [1932], and stating that " '[i]n practical terms, these standards mean that judgments involving injunctions have "prospective application," while money judgments do not' "); *Gibbs v. Maxwell House*, 738 F.2d 1153, 1155-56 (11th Cir. 1984) (" 'The judgment of dismissal in this case was not prospective within the meaning of 60[b][5]. It was final and permanent. That plaintiff remains bound by the dismissal is not a "prospective effect" within the meaning of rule 60[b][5] any more than if plaintiff were continuing to feel the effects of a money judgment against him.' "); *Marshall v. Board of Ed.*, 575 F.2d 417, 425 (3d Cir. 1978) (agreeing that " 'Rule 60[b][5] "does not cover the case of a judgment for money damages" '.").

The court in *Stokors* held that while the judgment against the defendant "may be 'prospective' to the extent that he has failed to pay it in a timely manner, it is nevertheless a final order and is not 'prospective' for purposes of Rule 60(b)(5)." 147 F.3d at 762. The court concluded that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment. As a result, the court determined that the trial court abused its discretion in granting relief to the defendant under Rule 60(b)(5). 147 F.3d at 762.

In its reply brief, Chrysler attempts to distinguish *Stokors* and the federal cases cited in *Stokors* on the basis that none of those cases involved an allegation that the defendant never owed the money awarded in the default judgment. Nevertheless, Chrysler cites no authority to support its argument that K.S.A. 60-260(b)(5) allows relief from a default judgment under such circumstances. Moreover, such a factual distinction would not implicate the application of Rule 60(b)(5) or K.S.A. 60-260(b)(5).

Rule 60(b)(5) "applies to any judgment that has prospective effect as contrasted with those that offer a present remedy for a past wrong." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2863, pp. 337-38 (1995). "It does not allow relitigation of issues that have been resolved by the judgment. Instead it refers to some change in conditions that makes continued enforcement inequitable." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2863, p. 340 and pp. 127-28 (2008 Supp.). See *Schildhaus v. Moe*, 335 F.2d 529, 530 (2d Cir. 1964); *Federal Deposit Insurance Corp. v. Alker*, 234 F.2d 113, 116 n.4 (3d Cir. 1956) (Rule 60(b)(5) applies "only to cases where a judgment which was valid and equitable when rendered is rendered prospectively inequitable by subsequent events.").

Here, there was no change in conditions occurring after the entry of default judgment that would make continued enforcement of the judgment inequitable. Although the Bank discovered after the entry of default judgment that Chrysler might not be the proper entity that owed the Dealership money for returned parts, this was not a change in conditions. The record establishes that if Chrysler was indeed not the entity owing money to the Dealership for the returned parts, then it had never been the entity owing money to the Dealership. There had never been a change in the entity that actually owed money to the Dealership. Moreover, based on the reasoning in *Stokors* and the other federal cases cited in that opinion, K.S.A. 60-260(b)(5) properly applies only to judgments with prospective effect and, therefore, does not apply to a judgment for money damages. See *Ryan v. United States Lines Company*, 303 F.2d 430, 434 (2d Cir. 1962). As a result, Chrysler's argument on this issue fails.

## II. *Was the Bank required to follow Supreme Court Rule 118?*

Next, Chrysler argues that the damages requested in the Bank's petition were unliquidated and that the Bank's failure to comply with Supreme Court Rule 118 (2008 Kan. Ct. R. Annot. 200) makes the judgment against Chrysler voidable. "The interpretation of a Supreme Court rule, like the interpretation of a statute, is a question of law." *Kansas Judicial Review v. Stout*, 287 Kan. 450, 459, 196 P.3d 1162 (2008). An appellate court's scope of review of questions of law is unlimited. See *Genesis Health Club, Inc. v. City of Wichita*, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).

Supreme Court Rule 118(d) states:

"Before any default judgment is taken in any action contemplated by this rule, the party seeking relief must notify the party against whom relief is sought of the amount of money for which judgment will be taken. Said notice shall be given by certified mail, return receipt requested, or as the court may order, at least ten (10) days prior to the date judgment is sought. Proof of service shall be filed and submitted to the court." (2008 Kan. Ct. R. Annot. 201).

This court has stated that "compliance with Rule 118(d) is mandatory." *Universal Modular Structures, Inc. v. Forrest*, 11 Kan. App. 2d 298, 300, 720 P.2d 1121 (1986). The "provisions of Rule 118(d) apply when default judgment is sought on any pleading of unliquidated damages." *Winner v. Flory*, 11 Kan. App. 2d 263, 265, 719 P.2d 20 (1986). Failure to comply with Rule 118 renders a resulting default judgment voidable. *Universal*, 11 Kan. App. 2d at 302.

Here, the trial court determined that Rule 118(d) was inapplicable because "[t]he specific sum recited in the [Bank's] petition of $80,700 represents liquidated damages." Nevertheless, Chrysler argues that the damages recited in the Bank's petition were unliquidated because the amount of damages was never fixed or certain and because it was unknown as to when the damages were allegedly due.

It is well established that " '[a] claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation.' " *Producers*, 15 Kan. App. 2d at 402-03 (citing *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 583, 682

P.2d 653 [1984]; *First National Bank v. Bankers Dispatch Corporation*, 221 Kan. 528, 537, 562 P.2d 32 [1977]). Thus, in order for a claim to be liquidated, two things must be shown: (1) the amount due must be fixed and certain or definitely ascertainable by mathematical computation; and (2) the due date must be fixed and certain or definitely ascertainable by mathematical computation.

In arguing that its claim against Chrysler was liquidated, the Bank bases its argument on *Producers*, 15 Kan. App. 2d 393. In that case, the plaintiff was the operator of oil and gas leases which had been assigned to the appellant, who was a defendant in the case. The plaintiff filed mechanics' liens against property, equipment, and the leases and then sought to foreclose those liens in the amounts of $6,453.33, $815.43, and $14,362.12. In its petitions, the plaintiff asked for those specified amounts plus interest and further stated that charges continued to accrue for labor and materials. The appellant failed to answer the petition, and the trial court entered default judgment against it. The default judgments, however, were in excess of the amounts requested in the plaintiff's petition. The trial court denied the appellant's motion to set aside the default judgments.

On appeal, this court in *Producers* held that a default judgment in excess of the amount claimed in the petition violates K.S.A. 1990 Supp. 60-254(c), and such judgment should be vacated or considered voidable to the extent of the excess. Moreover, this court held that the default judgments were voidable in part because the plaintiff had failed to comply with Supreme Court Rule 118(d). In so holding, this court noted that it was dealing with a claim for both liquidated and unliquidated damages: "The specific sums recited in the petitions represent liquidated damages. The claims for future or continuing services constitute unliquidated damages at the time the petitions were filed." 15 Kan. App. 2d at 403. The court pointed out that Rule 118(d) is applicable to any damages claim which is unliquidated when the petition is filed. This court determined that "since the petitions clearly sought liquidated damages, with unliquidated damages allowed at the time of judgment" and since it had already concluded that the amount of the judgment in

excess of the amount in the petition should be vacated, the unliquidated damages amount in the judgment should be set aside. 15 Kan. App. 2d at 403.

*Producers* will not bear the weight of reliance that the Bank attempts to impose on that case. This is because the appellant in *Producers* never challenged whether the amount claimed in the petition was liquidated. Instead, the appellant in *Producers* argued that the default judgments were voidable under K.S.A. 1990 Supp. 60-254(c) and Supreme Court Rule 118(d) because they granted relief *in excess of the amounts requested by the petitions*. 15 Kan. App. 2d at 399, 402. With this argument, the appellant in *Producers* implicitly agreed that the amount in the petition was liquidated. Moreover, *Producers* involved foreclosure of mechanics' liens, which often have supporting documentation attached. Nevertheless, because the appellant in *Producers* never argued that the amounts requested in the petitions were unliquidated, the opinion is devoid of any discussion of essential facts supporting the amounts requested in the petitions.

We turn now to the facts of the instant case. The Bank's petition in this case outlined its claim against Chrysler as follows:

"21. Upon information and belief Sankey Motors, Inc., has an account receivable due to it by Defendant Chrysler Financial Company, LLC in the amount of $80,700.00.
"22. Plaintiff has a perfected security interest in said account receivable and is entitled to any and all payments made or to be made by Chrysler Financial Company, LLC on said account receivable."

In its prayer for relief at the conclusion of its petition, the Bank asked "[t]hat Chrysler Financial Company, LLC be ordered to pay the outstanding balance of the above described account receivable to the Plaintiff."

### A. Due Date

Nowhere in the Bank's petition does it list the date on which the account receivable became due. Further, there is no evidence in the record indicating when the account receivable became due. We are guided in this inquiry by several prior cases that have considered when a claim becomes liquidated. Most significant, in

*Phelps Dodge Copper Products Corp. v. Alpha Construction Co.*, 203 Kan. 591, 455 P.2d 555 (1969), the trial court and our Supreme Court were able to ascertain the date when the plaintiff's claim became liquidated: based upon the dates identified in the pleadings and the evidence contained in the record. There, the plaintiff was awarded judgment against the defendants for money damages based on copper products that it had sold and delivered to the defendants. In determining the date that damages had been liquidated, our Supreme Court noted:

"There has been no dispute as to what Alpha owed Phelps Dodge for goods sold and delivered, nor as to terms of payment. The agreed price was admitted by Alpha in response to a request for admissions and the date of payment was established by invoice as 30 days after date. The pleadings established that materials were supplied by Phelps Dodge from November, 1964 to October, 1965, and the trial court found, without objection, that the final delivery date was October 22, 1965. Thus payment was due November 22, 1965." 203 Kan. at 594.

Based on those undisputed facts, our Supreme Court held that there could be no doubt that the claim became liquidated as of November 22, 1965, thus entitling the plaintiff to interest on the liquidated amount. 203 Kan. at 594.

In this case, the Bank had the opportunity to present evidence that the damages claimed in its petition were a liquidated amount. In granting default judgment against Sankey and the Dealership, the trial court noted that Chrysler was also in default. The trial court noted that "all other claims will be determined at such separate time as may be necessary and expedient, including but not limited to the claims asserted against Chrysler Financial Company, LLC, which is also in default hereunder." The Bank, however, never filed anything with the trial court to establish that its claim was liquidated. For example, there is no invoice from the Dealership showing when the parts were returned for a refund. There is no indication as to when the parts were returned by the Dealership. Further, there is no return slip indicating when a refund could be expected or any information concerning the Dealership's past practices as to when a refund for returned parts was normally received.

Finally, there is not a specific finding by the trial court as to when the $80,700 amount claimed by the Bank became liquidated. See *Plains Resources*, 235 Kan. at 583-84 (where trial court made no finding that plaintiff's claim became liquidated as of particular date and gave no other reason for allowance of prejudgement interest on compensatory damages award, trial court's award of prejudgment interest was in error). The journal entry of default judgment did award the Bank interest "from and after January 1, 2006, at the rate of $22.11 per day until fully paid." Nevertheless, there is nothing in the record that would support the award of interest from that date. Instead, it appears that the January 1, 2006, date was taken from the journal entry of default judgment against Sankey and the Dealership; the record, however, contains supporting documentation and shows that calculations had been made as to the amount owed by Sankey and the Dealership to the Bank as of January 1, 2006. The record contains no such calculations and supporting documentation as to the amount owed by Chrysler. As a result, the due date of the $80,700 amount was never "fixed and certain" or "definitely ascertainable by mathematical computation." Therefore, the damages claimed against Chrysler were never liquidated.

## B. Amount Due

Moreover, there is no documentation in the record from which a "fixed and certain" amount due could be reconstructed. The only indication in the record of the amount owing to the Dealership was in a Loan Comment Sheet, which was attached to Chrysler's motion to set aside the default judgment and which the Bank had faxed to Chrysler in October 2006. The Loan Comment Sheet, which apparently was drafted by the Bank's president, provided as follows:

"Ron called me today to tell me that he had flown to Denver to meet with Dave Rhodonas in the Chrysler office for this area, about the amount of monies he is owed. He said that Chrysler agreed that he is owed $42,700 on his parts returns, but there is a difference in what other monies he is owed by an amount of $9,000.00. Ron has documentation that he is owed an additional $38,000 and Chrysler says they owe him $29,000. There still is no indication as to when Chrys-

ler will pay him. I told him we needed documentation as to what was said. He said he would send me the information he had."

Based on this Loan Comment Sheet, there had never been an agreement as to the amount owed on the account receivable. The Loan Comment Sheet establishes that the Bank was aware that the $80,700 amount claimed in its petition was a disputed amount.

Our research has revealed no Kansas case that involved the application of Supreme Court Rule 118 when the petitioner has claimed a particular damages amount in the petition but is aware that the amount is uncertain. Nevertheless, the Supreme Court case of *First National Bank*, 221 Kan. 528, gives guidance as to when a claim becomes liquidated. There, the plaintiff bank, as shipper, sued a motor vehicle carrier to recover damages for the loss of two packages of checks. Damages were awarded to the plaintiff in the lawsuit. On appeal, our Supreme Court had to determine when the plaintiff's claim became liquidated so that it could compute the allowance of interest on the damages award. Our Supreme Court determined that the plaintiff's loss became liquidated when the plaintiff was able to reconstruct the lost checks and determine the expenses involved in reconstruction. 221 Kan. at 536-38.

Here, the record fails to establish that there was any effort made by the Dealership or the Bank to reconstruct the actual amount that was owed on the account receivable. For example, there was no invoice of the parts that had been sent back by the Dealership. There was no other itemization of the parts that had been returned for a refund. Based on the record in this case, it cannot be said that the $80,700 amount claimed in the Bank's petition was fixed and certain or definitely ascertainable by mathematical computation. As a result, the $80,700 amount did not represent liquidated damages.

Because the damages claimed in the Bank's petition against Chrysler were unliquidated, the Bank was required to comply with Supreme Court Rule 118(d) in seeking a default judgment. Under Supreme Court Rule 118(d), the Bank was required to notify Chrysler by certified mail, return receipt requested, of its motion for default judgment at least 10 days before the date it sought

default judgment. The Bank's failure to comply with Supreme Court Rule 118(d) renders the default judgment voidable. Because Chrysler, the named defendant in this case, has challenged the default judgment under Supreme Court Rule 118(d), the judgment is declared void.

Reversed and remanded.