NOT DESIGNATED FOR PUBLICATION

No. 113,087

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES R. ELLEDGE,
*Appellee*,

v.

JOHN M. CHEESMAN and
MARY KAY CHEESMAN,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed October 30, 2015. Reversed and remanded.

*Glenn D. Young, Jr.* and *Jerry D. Bogle*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellants.

*Aaron J. Good*, of Klenda Austerman, LLC, of Wichita, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

MALONE, C.J.: John M. Cheesman and Mary Kay Cheesman appeal the district court's denial of their motion to set aside a default judgment. For the reasons stated herein, we conclude the district court erred in denying the motion and we remand for further proceedings.

This appeal arises out of a breach of contract claim filed by James R. Elledge against John Cheesman and his daughter Mary Kay Cheesman (the Cheesmans) based on a Settlement Agreement and Agreement to Confession of Judgment (Settlement

1

Agreement) entered into between the parties on April 7, 2011. The Settlement Agreement explains that Elledge, while an agent and fiduciary with power of attorney, self-dealt with John's funds for his own personal profit. In doing so, Elledge unduly influenced John to convey the property at 1470 Hornecker in Wichita (Hornecker property) to Elledge. Elledge then used the Hornecker property to secure a loan for $93,104.88. Elledge used most of the loan proceeds to purchase his current residence in Wichita.

The Cheesmans sued Elledge for his fraudulent actions, and the lawsuit was ultimately settled pursuant to the Settlement Agreement. Under the Settlement Agreement, prepared by counsel, the Cheesmans remained in possession of the Hornecker property and Elledge was required to repay the mortgage loan. Elledge also was required to execute a deed as grantor and Mary Kay Cheesman as grantee, and the deed was placed into escrow with Lawyers Title Insurance Corporation of Wichita until the mortgage was paid in full, at which time the deed would be delivered to the grantee.

Also under the Settlement Agreement, the Cheesmans were required to pay the property taxes and insurance premiums on the Hornecker property and maintain the property in accordance with applicable law. If they failed to do so, paragraph 16 of the Settlement Agreement provided that the Hornecker property would be sold and the proceeds of that sale would first go to satisfying the mortgage and then any surplus would go to the Cheesmans. Paragraph 16 further provided that if the property did not sell for an amount equal to or greater than the mortgage, then Elledge would be responsible for any shortfall. Finally, paragraph 17 of the Settlement Agreement provided that any and all notices with respect to the agreement shall be mailed to counsel for each party at the addresses included in the agreement.

On August 5, 2014, Elledge filed a verified petition alleging the Cheesmans had failed to pay the property taxes and insurance premiums on the Hornecker property and had failed to maintain the property in accordance with applicable law. The petition

included several causes of action, including breach of contract, *i.e.*, breach of the Settlement Agreement, and unjust enrichment. The petition requested a money judgment against the Cheesmans in the amount of $6,792.37 for unpaid property taxes and insurance premiums. The petition also sought injunctive relief preventing the Cheesmans from entering the Hornecker property; for a writ of assistance placing Elledge in full and complete possession of the Hornecker property; and for a court order extinguishing any and all rights the Cheesmans may claim in the Hornecker property.

The petition alleged that John Cheesman could be served with process at 2315 N. Regency Lakes Court, Wichita, Kansas. It is undisputed that at all times throughout the proceedings that John suffers from dementia and Alzheimer's disease which is why Elledge had been entrusted to take care of his property in the first place. However, no claim was ever made that John is disabled to the extent that he could not be served with process or that a legal representative had been appointed on his behalf. The petition alleged that Mary Kay Cheesman could be served with process at the Hornecker property.

The record does not include a return of summons on either defendant but apparently Elledge obtained "residence service" on the Cheesmans by leaving a copy of the summons and petition at their respective dwellings, followed by first-class mail. The record also reflects that on August 25, 2014, Elledge's counsel mailed a copy of the verified petition to the Cheesmans' attorney, Jerry Bogle, at the address given for his law office in the Settlement Agreement, but the letter was returned to Elledge's counsel as undeliverable because Bogle had moved his law office to another location in Wichita.

The Cheesmans failed to file a timely answer to the petition, so on September 3, 2014, Elledge's attorney secured a default judgment against them, including a money judgment in the amount of $6,792.37, injunctive relief preventing the Cheesmans from entering the Hornecker property, a writ of assistance placing Elledge in full and complete possession of the Hornecker property, and a court order extinguishing any and all rights

3

the Cheesmans may claim in the Hornecker property. Also on September 3, 2014, Elledge's attorney remailed a copy of the verified petition to Bogle's correct address.

On the next day, September 4, 2014, Elledge filed an amended journal entry of default judgment, but it included essentially the same relief as the original journal entry of default judgment. That same day, Elledge secured a writ of assistance and restitution evicting the Cheesmans from the Hornecker property. The writ was served at the Hornecker property the next day on September 5, 2014.

On September 24, 2014, the Cheesmans filed a motion to set aside default judgment. Specifically, the Cheesmans alleged that the judgment was void for lack of service of process. Elledge filed a response to the motion, claiming that setting aside the judgment would prejudice him; that the Cheesmans lacked any meritorious defense; and that the Cheesmans' failure to respond to the lawsuit was not excusable.

The district court held a hearing on the motion to set aside default judgment on October 3, 2014. John and Mary Kay Cheesman both testified at the hearing along with Brad Ledbetter, John's son-in-law and Mary Kay's brother-in-law. Elledge also testified at the hearing. Mary Kay testified that although she considered the Hornecker property to be her homestead, she had not been living at the property for at least a year and there had been no gas or electricity at the property for over a year. She stated that she currently was living at her mother's house. Mary Kay testified that her fiancé and Ledbetter had been working for several months to make improvements on the property so it would again be habitable. She testified that she occasionally came by the property but she never saw a summons or notice of the lawsuit at the front door. Mary Kay testified that she did not know about the lawsuit until Ledbetter found the writ of assistance and restitution at the door. On cross-examination, Mary Kay acknowledged that she was at the Hornecker property on August 24, 2014, because she had visited with a neighbor on that day. Nevertheless, she testified that she never saw any summons at the door on that day.

4

John Cheesman testified that he never received a summons at his current residence on Regency Lakes Court. He testified that it was his usual habit to always enter and exit his residence through the back door, and the front door always remains locked and he never uses it. He testified that he only leaves his residence about twice a month to buy food. He also testified that he receives his mail through a community mailbox at the end of the street; that he had problems in the past with receiving his mail; and he never received any summons in the mail about the lawsuit. Finally, John disputed Elledge's allegation that the property taxes and insurance premiums on the Hornecker property had not been paid. Ledbetter corroborated this testimony by stating that his wife (John's daughter) was responsible for making those payments and the payments had been made.

After the evidence was presented, the Cheesmans argued that the motion to set aside the default judgment should be granted, specifically because the Cheesmans had not been served with process. Counsel also argued that under the Settlement Agreement, the Cheesmans had an equitable mortgage in the property and were entitled to a redemption period. Elledge's attorney argued that the Cheesmans were not entitled to any relief.

After hearing the evidence and arguments of counsel, the district court found that the Cheesmans' testimony about not receiving the summons was not credible. The district court found: (1) that Elledge had properly served the Cheesmans; (2) that the Cheesmans did not have a meritorious defense to Elledge's claims; and (3) that the Cheesmans were not entitled to a redemption period. The district court refused to set aside the default judgment, but the district court specifically ordered that paragraph 16 of the Settlement Agreement was to be followed in terms of enforcing the default judgment. The Cheesmans timely appealed the denial of their motion to set aside the default judgment.

On appeal, the Cheesmans argue that the district court erred in denying their motion to set aside the default judgment. Specifically, they argue that the district court erred in finding that there was proper service of process. The Cheesmans also argue that

5

under the Settlement Agreement, they had an equitable mortgage in the Hornecker property and were entitled to a redemption period.

In response, Elledge argues that the district court correctly ruled that he obtained proper service on the Cheesmans. He also argues that the district court properly ruled that the Cheesmans did not provide credible evidence concerning excusable neglect or a meritorious defense. Finally, Elledge argues that the district court properly rejected the Cheesmans' claim for an equitable mortgage and redemption rights.

A decision to set aside a default judgment rests within the discretion of the district court and therefore is subject to review under an abuse of discretion standard. See K.S.A. 2014 Supp. 60-255(b); *First Nat'l Bank in Belleville v. Sankey Motors, Inc.*, 41 Kan. App. 2d 629, 634, 204 P.3d 1167 (2009). A court abuses its discretion when its action "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Although default judgments are not favored by the law, they are necessary when the inaction of one party frustrates the administration of justice. *Jenkins v. Arnold*, 223 Kan. 298, 299, 573 P.2d 1013 (1978); *First Management v. Topeka Investment Group*, 47 Kan. App. 2d 233, 239, 277 P.3d 1150 (2001). A court may set aside a default judgment for good cause when the movant has proven by clear and convincing evidence: "'(1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of *inexcusable neglect or a willful act*. [Citations omitted.]'" *Montez v. Tonkawa Village Apartments*, 215 Kan. 59, 64, 523 P.2d 351 (1974); *First Management*, 47 Kan. App. 2d at 239.

We will first address the Cheesmans' claim that the district court erred in finding that there was proper service of process. If the Cheesmans are successful on this claim,

6

then the default judgment is void. See K.S.A. 2014 Supp. 60-260(b)(4). If the judgment is void, then the Cheesmans are not required to establish any of the three factors generally required to set aside a valid default judgment.

Elledge obtained service of process against both John and Mary Kay by "residence service" under K.S.A. 2014 Supp. 60-303(d)(C), which allows for service of process "by leaving a copy of the process and petition or other document at the individual's dwelling or usual place of abode," followed by first-class mail to the individual's dwelling. Mary Kay Cheesman testified that she never saw the summons at the Hornecker property because she had not stayed at the property for over a year while it was being substantially repaired. This testimony makes sense because, after all, one of the stated reasons for Elledge's lawsuit was because the Cheesmans were not maintaining the property. John Cheesman testified that he never received the summons at his residence on Regency Lakes Court because he is elderly, shut-in, and only leaves the house twice a month to buy food. This testimony also seems believable as the facts are undisputed that John Cheesman suffers from dementia and Alzheimer's disease.

Nevertheless, the district court found that the Cheesmans' testimony about not receiving the summons was not credible. Whether the summons was properly served on the Cheesmans by leaving a copy of the process and petition at John and Mary Kay's dwelling or usual place of abode was a question of fact for the district court to decide. The district court's factual findings are generally reviewed under the substantial competent evidence standard. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). However, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. See 298 Kan. at 1175-76. We will not set aside the district court's credibility determination as to John and Mary Kay's testimony. Thus, we reject the Cheesmans' claim that the district court erred in denying the motion to set aside the default judgment based upon improper service of process.

However, the record reflects other grounds which lead us to conclude that the district court erred in denying the Cheesmans' motion to set aside the default judgment. First and foremost, the record before this court reflects that Elledge's default judgment grants him relief for which he was not legally entitled to receive. Elledge's default judgment grants him a money judgment against the Cheesmans for $6,792.37, supposedly to reimburse Elledge for the property taxes and insurance premiums that the Cheesmans failed to pay on the Hornecker property. But the Settlement Agreement upon which Elledge brought his lawsuit does not provide any legal basis for Elledge to obtain a money judgment against the Cheesmans if they failed to pay the property taxes and insurance premiums. Paragraph 16 of the Settlement Agreement states:

> "16. Should plaintiffs [John and Mary Kay] fail to pay the real estate taxes either when due or the event of the taxes being paid out of escrow within thirty (30) days of demand, allow the casualty insurance to lapse due to nonpayment, or fail to maintain the property in accordance with applicable law, fail to bring said property into compliance within 90 days of being cited by Sedgwick County or any governing authority, then plaintiffs shall be deemed to be in default and shall vacate the premises within thirty (30) days. Said property shall be sold either by a mutually acceptable realtor or at auction within 60 days of plaintiffs' default, if the parties are unable to agree to a realtor. The proceeds shall go to mortgagee first and thereafter to plaintiffs should there be any residue. Plaintiffs' [*sic*] shall not be entitled to anything else in the event of plaintiffs' default and the consent judgment shall be null and void. Should the property not sell for an amount greater than the mortgage, then defendant will be responsible for any shortfall."

Paragraph 16 of the Settlement Agreement clearly sets forth Elledge's remedy in the event that the Cheesmans failed to pay the property taxes and insurance premiums on the Hornecker property. In such a situation, the Settlement Agreement provided that the Hornecker property would be sold and the proceeds of that sale would first go to satisfying the mortgage and then any surplus would go to the Cheesmans. The Settlement Agreement further provided that if the property did not sell for an amount equal to or

8

greater than the mortgage, then Elledge would be responsible for any shortfall. Paragraph 16 of the Settlement Agreement specifically addresses the remedy in the event the Cheesmans failed to pay the property taxes and insurance premiums on the Hornecker property, and nothing in paragraph 16 provides Elledge with any legal basis for obtaining a money judgment against the Cheesmans.

Elledge points out that his petition included a claim against the Cheesmans for unjust enrichment. Specifically, the petition alleged that the Cheesmans were required to pay property taxes and insurance premiums on the Hornecker property, that they failed to do so, and that retention of the benefit of those payments would be "unjust under the circumstances." Elledge argues that his unjust enrichment claim supports the default judgment he obtained against the Cheesmans for $6,792.37.

We reject Elledge's argument for several reasons. First, as we have stated, paragraph 16 of the Settlement Agreement specifically addresses the remedy in the event the Cheesmans failed to pay property taxes and insurance premiums on the Hornecker property, and nothing in paragraph 16 provides Elledge with any legal basis for obtaining a money judgment against the Cheesmans. Second, given the history of this case and the undisputed facts that led to the prior settlement agreement, including Elledge's unclean hands in defrauding John Cheesman out of the Hornecker property in the first place, it is somewhat disingenuous for Elledge to seek the equitable remedy of unjust enrichment. Finally, although the district court denied the Cheesmans' motion to set aside the default judgment, the district court specifically ordered that paragraph 16 of the Settlement Agreement was to be followed in terms of enforcing the default judgment.

K.S.A. 2014 Supp. 60-255(a) provides that on request and a showing that a party is entitled to a default judgment, the court must render judgment against the party in default "for the remedy to which the requesting party is entitled." But here, the record before this court reflects that Elledge's default judgment grants him relief for which he

9

was not entitled to receive. For this reason alone, Elledge's default judgment fails to comply with the provisions of K.S.A. 2014 Supp. 60-255(a).

We also have concerns about the manner in which the default judgment was obtained. The Cheesmans were represented by counsel at all times during their legal battles with Elledge over the Hornecker property. Paragraph 17 of the Settlement Agreement provided that any notices, requests, or other communications contemplated with respect to the agreement shall be made by U.S. mail to Bogle, the Cheesmans' attorney. The record does not reflect that Elledge sent any written notice or demand letter to Bogle prior to filing the petition in district court on August 5, 2014. The record does reflect that on August 4, 2014, Bogle communicated by email with Elledge's counsel concerning the Cheesmans' efforts to clean up the outside of the Hornecker property. Significantly, that email included Bogle's current office address and phone number.

On August 25, 2014, 20 days after filing the lawsuit, Elledge's counsel mailed a copy of the verified petition to Bogle at his prior office address listed in paragraph 17 of the Settlement Agreement, even though Elledge's counsel should have known that address was not current because of the email. When the August 25, 2014, mailing was returned to Elledge's counsel as undeliverable, he remailed the copy of the petition to Bogle's current address on September 3, 2014—the same day that Elledge's counsel went down to the courthouse and obtained a default judgment against the Cheesmans.

We are not saying that Elledge's counsel did anything illegal or unethical in obtaining the default judgment against the Cheesmans. But the miscommunication between the attorneys, which we presume was accidental, is a factor that weighs in favor of granting the Cheesmans relief from the default judgment.

Moreover, the equities in this case weigh in favor of granting the Cheesmans relief from the default judgment. As detailed in the Settlement Agreement which provided the

10

basis of this lawsuit, Elledge, while an agent and fiduciary with power of attorney, self-dealt with John Cheesman's funds for his own personal profit. In doing so, Elledge unduly influenced John to convey the Hornecker property to Elledge. Elledge then used the Hornecker property to secure a loan for $93,104.88, and he used most of the loan proceeds to purchase his current residence in Wichita. Elledge cheated John Cheesman out of the Hornecker property after the residence had belonged to the Cheesman family for almost 50 years. All these facts are undisputed. Now, with the default judgment, Elledge apparently has legal title to the Hornecker property, the Cheesmans have been evicted, and Elledge has a money judgment against the Cheesmans for $6,792.37.

Default judgments are not favored by the law. See *Jenkins*, 223 Kan. at 299; *First Management*, 47 Kan. App. 2d at 239. Nevertheless, as we previously stated, for the Cheesmans to set aside the default judgment in this case, they needed to establish that (1) Elledge will not be prejudiced by the reopening, (2) the Cheesmans have a meritorious defense, and (3) the default was not the result of inexcusable neglect or a willful act. See *Montez*, 215 Kan. at 64, *First Management*, 47 Kan. App. 2d at 239.

Elledge testified at the hearing on the motion to set aside the default judgment that he had spent over $3,000 repairing the damage to the Hornecker property after he gained possession; thus, he claims he would be prejudiced by setting aside the default judgment. Under all the facts and circumstances of this case, we conclude that this testimony fails to establish sufficient prejudice to justify the denial of the Cheesmans' motion. We have discussed Elledge's unclean hands in defrauding John out of the Hornecker property in the first place. Also, it appears from all the information contained in the record that the Hornecker property is likely worth less than the mortgage, in which case Elledge's repair payments will serve to mitigate his loss when the property is ultimately sold.

The Cheesmans have asserted a meritorious defense. John Cheesman and Brad Ledbetter both testified at the hearing that the property taxes and insurance premiums

11

have been paid. More importantly, the record clearly establishes a meritorious defense because Elledge is not entitled to a money judgment against the Cheesmans under paragraph 16 of the Settlement Agreement. Finally, the record on appeal establishes that the default judgment was not the result of inexcusable neglect or a willful act on the part of the Cheesmans. For all the reasons we have discussed, the equities lie in favor of granting the Cheesmans relief from the default judgment.

In summary, based on all the facts and circumstances included in the record on appeal, we conclude the district court abused its discretion in denying the Cheesmans' motion to set aside the default judgment. Based on this determination, we do not need to address the Cheesmans' claim that they had an equitable mortgage in the Hornecker property and were entitled to a redemption period. We reverse the district court's denial of the motion to set aside the default judgment and remand for further proceedings.

Reversed and remanded.